## BRIDGE CO. *v.* BARNES.

### (*Nashville.* January 16, 1897.)

1. VERDICT. *Evidence supports.*

   The Court sustains the verdict upon the evidence, set out in the
   opinion, of defendant's negligence in piling the steel rails,
   from the falling of which plaintiff's injury resulted. (*Post,
   pp. 402–408.*)

2. EVIDENCE. *Showing skill and earning capacity.*

   It is competent for plaintiff, in an action for personal injury, to
   exhibit to the jury a crazy quilt as evidence of her former skill
   in needlework, and of her ability and capacity for earning,
   and then to prove that, as a result of her injury, she had been
   deprived of the power to do such work. (*Post, pp. 408, 409.*)

   Cases cited and approved: Railroad *v.* White, 5 Lea, 540; Railroad
   *v.* Gurley, 12 Lea, 53; Railroad *v.* Stacker, 86 Tenn., 343.

3. ASSIGNMENT OF ERROR. *For erroneous admission of evidence bad,
   when.*

   An assignment of error upon an erroneous admission of evidence,
   is bad when the record fails to disclose any action of the lower
   Court upon the exception to the evidence. (*Post, pp. 409–411.*)

   Question reserved: Can a plaintiff sustain himself by evidence of
   his general character when his testimony has not been attacked
   otherwise than by cross examination or contradiction?

   Cases cited: Scott *v.* Fletcher, 1 Overton, 488; Hart *v.* Reynolds,
   1 Heis., 208; Henry *v.* Brown, 2 Heis., 213; Speers *v.* Int. Ins.
   Co., 1 Bax., 370; Hills *v.* Goodyear, 4 Lea, 233; Richmond *v.*
   Richmond, 10 Yer., 345.

4. CHARGE OF COURT. *As to plaintiff's agency in causing injury.*

   An instruction that if plaintiff, in the daytime, and with an un-
   obstructed view of a pile of iron in the street, negligently
   drove against it, and thereby caused a piece of iron to fall and
   injure her, the jury should find for defendants, is not reversi-
   ble error, and if the defendant desires an instruction to the

14 P—26

same effect, but eliminating the feature of negligence, he should request the same. (*Post, p. 411.*)

5. SAME. *Same.*

A judgment for plaintiff in an action for personal injuries, will not be reversed because of the use of a conjunctive in an instruction requiring the jury to find for defendant, if they believe that the plaintiff's injuries were simulated, "and" believe that her own negligence was the proximate cause of the accident, or directly contributed thereto, where it was conceded that plaintiff's injuries were genuine. (*Post, pp. 411–413.*)

FROM DAVIDSON.

Appeal from Circuit Court of Davidson County. J. W. BONNER, J.

VERTREES & VERTREES for Bridge Co.

N. D. MALONE and E. B. RUCKER for Barnes.

McALISTER, J. The plaintiff below recovered a judgment in the Circuit Court of Davidson County against the Youngstown Bridge Company, for the sum of four thousand ($4,000) dollars damages for personal injuries. The bridge company appealed, and has assigned errors. The gravamen of the action, as outlined in the declaration, is that the defendant company, in the process of erecting the structural steel work for the Jackson building, in the city of Nashville, negligently and carelessly

placed a pile of girders on Summer Street, and that while the plaintiff, Miss Jennie Barnes, was driving along the street in a buggy, the pile of girders fell, and one of them struck her on the head and shoulders, and broke her skull and drove pieces of pin into her head and body, or, as charged in another count, that the girder in falling knocked the buggy top against her so as to break her skull and drive in the pieces of hairpin; that said injuries caused plaintiff to be confined for many months to her bed, necessitating the removal of portions of her skull, and producing the greatest mental and physical suffering; that plaintiff has never recovered from .said injury, and she is now an invalid for life. Among other assignments of error, it is urged there is no sufficient legitimate evidence to sustain the verdict. Two theories were presented on the trial below, in respect to the happening of the injury. The theory of the defendant company was, that the plaintiff carelessly drove against the pile of girders, and pulled them down with her right-hand buggy wheel. There was some evidence tending to establish this theory, but it is evident this contention was discarded by the jury, who believed the theory presented by the plaintiff, which was that the girders were so carelessly and negligently piled that they fell down without any external violence, but from their own improper construction. The insistence of counsel for plaintiff in error is, that there is no evidence whatever that the pile was neg-

ligently or dangerously or improperly constructed, but that the evidence established directly the converse of this proposition. The record shows that before any of this material was piled in the street, permission was obtained from the City Building Inspector, who designated the limits of the street that should be so occupied.

The evidence of defendant company tended to show that this material did not at any point extend into the street further than thirteen feet from the west curbing, and that ample room was left for the passage of vehicles east of said material. The steel beams and girders were deposited in the street in three several piles, extending from a point near Church Street to a point some distance below the Jackson building on Summer Street. The accident, it is conceded, occurred at the second pile. The steel beams composing this pile were of two sizes and lengths—the longer beams being twenty-three feet and the shorter beams ten feet long, with flanges four and five inches wide. The evidence of the company tends to show that on the east side the beams were piled about three or three and one-half feet high, and were almost perpendicular; that the pile then sloped back towards the sidewalk, and on its west side was from five to seven feet high; that the beams were piled in a proper manner, and were flange-locked. These facts are established by Kline, the city building inspector; by Dudley, the architect of the building, and by Gleaves, Bush & Davis, who

had the contract and hauled the beams and girders and piled them in the street.

The case as developed by plaintiff's proof is, that in company with her sister she was driving along Summer Street in a buggy, and when about opposite the second pile of steel her attention was attracted by a loud noise; that she saw the steel trembling. One piece fell and struck the horse on the right hip, another fell between the horse and the buggy wheel, and that she caught a glimpse of a third as it came down even with the top of the buggy. Plaintiff claims that she then became unconscious, and does not know whether the beam struck her or the buggy; that consciousness returned to her at the corner of Broad and Summer Streets, where she discovered some men tying up a part of the buggy which had been broken. She then experienced a terrible headache and thought her right arm was broken. Reaching home, she became sick, her head was swimming, and she was compelled to take her bed; that for eleven months she suffered with convulsions, and that for nine months of the time they recurred daily; that after this time an operation was performed and pieces of her skull were removed; that plaintiff was strong and healthy before the accident but is now a confirmed invalid.

Miss Maggie Barnes was with the plaintiff at the time of the accident, and stated that she heard the loud noise, which she thought was a blast, and saw one of the beams fall or roll from the top of the pile

and strike the horse; that another piece also fell or rolled from the top of the pile, and the end came a little in the buggy. It jarred and shook the buggy so violently that her sister was thrown against her and down on her knees in the bottom of the buggy. The fender over the right-hand wheel was broken, and also one or two spokes. This witness stated that the iron was piled about one foot higher than the top of the buggy, and the buggy was about one foot and a half from the pile. This witness did not know what caused the noise she heard, but supposed it was a blast. The attention of other witnesses was attracted by the loud noise, and, upon looking up, they saw the beams falling or rolling from the pile. One witness saw the beam strike the fender of the buggy on the same side plaintiff was seated, which was next to the pile. The steel, says this witness, was piled about as high as a man's head. There is also evidence to show that the horse alleged to have been struck by one of the steel beams was lame after the accident.

But the question upon this assignment of error is whether there is any evidence in the record that the steel beams were negligently piled. The city building inspector testified that the pile sloped back at an angle of forty-five degrees from the middle of the street to the Jackson building, and, while he insists that the beams were properly piled, he admits that they were very uneven on account of the flanges on the beams. Palmer, a witness for plain-

tiff, testified that he passed the place frequently, and observed that pieces of the steel were piled crosswise and angling all through the piles. This witness, however, does not identify the pile on which he observed the irregularity. J. B. Hobson, another witness for plaintiff, testified that he was at work just below the piles, and passed there every day; that the iron extended out into the street between one-half and two-thirds the entire width of the street; that at the eastern edge of the pile in the street, it was six or seven feet high and on the other edge next to the Jackson building, the pile was eight or ten feet high. "The steel was sometimes piled diagonally, and looked ragged and careless; it was lying very irregular on top; that the second pile was the worst looking; they had stuck the pieces in unevenly and had just rolled them from the wagon; that this was the condition of the piles both before and after they began to put the beams together in the building." Andrew Singer, another witness, stated that in passing the piles he noticed a piece of steel on top, lying diagonally across the pile and that this was prior to the accident to the plaintiff, but the witness failed to identify the pile. The proof further shows that the pieces of steel weighed from three hundred and fifty pounds to six and eight tons, and were from seven to twenty-five feet long and were all mixed in together. Another witness, Withrow, stated that the iron was piled about six feet on the east side,

and on the west side about eight feet high; that one of the pieces lay " cat-a-cornered " on top.

Mr. Thad Davis, to whom the contract for hauling the beams was awarded, stated that the pieces could not be laid with exact regularity because they were of different lengths, sizes, and shapes, and they were all mixed together in the piles; that the flanges did not rest on each other on the first or bottom pieces. Witness admits they had no regular way of building the piles. Kline, the city inspector, states the iron was piled up like cordwood, and very uneven. The piles sloped upward from the front towards the building, at an angle of forty-five degrees. This witness says the street side of the piles of iron was one and one-half feet high while the back of the piles was five or six feet high. Now, several witnesses state that they saw the iron as it came rolling down off the pile; that the iron was piled up sloping and it just rolled down the slope, making considerable noise.

We think there is material evidence here, tending to show negligence on the part of the bridge company in piling the steel, and, while it may not preponderate, it is yet sufficient, under the rules of this Court, to support the verdict of the jury.

The next assignment of error we notice is that the trial Court permitted the plaintiff, when examined, to exhibit a crazy quilt to the jury as evidence of her former skill in needlework, and then to prove that she could not do the work since the

injury. This, it is insisted, is error, for the reason that it forced the defendant to accept the quilt as evidence of great skill or to go into evidence that it was not—a matter collateral to the case and incompetent. We perceive no error in the admission of this testimony. It tended to show and illustrate the ability of the plaintiff to earn a living by needlework and that this means of livelihood had been destroyed by the accident. It is competent always to show the injured person's ability and capacity for earning, as well as his skill in any particular art or profession. *Railroad* v. *White*, 5 Lea, 540; *Railroad* v. *Gurley*, 12 Lea, 53; *Railroad* v. *Stacker*, 2 Pick., 343.

It is next assigned as error that the Court permitted plaintiff to introduce in rebuttal witnesses to prove her general character, and that she was entitled to credit on oath. It is insisted this was error, for the reason that defendant did not introduce evidence reflecting upon the character of plaintiff, or in any way attack it, and that her character was not involved as a witness or as a party by reason of the nature of the action. The proposition of defendant's counsel is, that in civil actions evidence as to general character is not admissible unless it is involved by reason of the nature of the action, or has been attacked by the opposite side. *Scott* v. *Fletcher*, 1 Overton, 488; *Hart* v. *Reynolds*, 1 Heis., 208; *Henry* v. *Brown*, 2 Heis., 213; *Speers* v. *International Ins. Co.*, 1 Bax., 370; *Hills* v.

*Goodyear*, 4 Lea, 233; Wharton on Ev., Vol. I., Sec. 47; Rice on Ev., Vol. II., page 1242, Sec. 505; 2 Taylor on Ev., Sec. 1476.

It is insisted, however, by counsel for plaintiff, that this evidence was admissible, for the reason that plaintiff's character was attacked by the manner of her cross-examination. The proposition of counsel for plaintiff is, that a witness may be impeached by proving that he is not worthy of credit, or that the facts to which he deposes are not true, or by cross-examination tending to show that no credit was given his statements, and tending to make that impression on the jury. *Richmond* v. *Richmond*, 10 Yer., 345. The record in this case shows that plaintiff was subjected to a very searching cross-examination, covering about forty pages of typewritten matter. We find, however, upon examination of the record, that the question presented in this assignment of error was not raised by proper exception on the trial below. The only exception raising this question was made on the examination of the witness, Prof. Hamilton. The witness was asked by counsel for plaintiff if he knew plaintiff's general character, whether it was good or bad, and if, from that knowledge of her character, he would believe her on oath in a Court of justice. The witness answered the several questions in the affirmative, whereupon counsel for defendant "objected to this character of testimony, for the reason that her character had not been attacked." But the record fails

Bridge Co. *v.* Barnes.

to show any ruling whatever by the Court on this exception. Unless there is a ruling by the Court, there can be no predicate for an assignment of error. The exception may have been sustained, or it may have been abandoned by counsel.

The next assignment is that the Court erred in the following instruction, to wit: "If, therefore, you find from the proof, that the plaintiff, in the day time, and with an unobstructed view of the pile of iron, negligently drove against the pile of iron, and thereby caused one of them to fall, you should find for defendants." The criticism upon the charge is, that it implies, unless the plaintiff negligently drove against the pile, the verdict should be for the plaintiff. The argument is, that if the plaintiff, in any manner, either negligently or otherwise, drove against the pile of beams and caused them to fall, she cannot recover. It is insisted the Court should have charged "if the plaintiff drove against the pile of iron, and thereby caused one of the beams to fall." The use of the word "negligently," it is insisted, was calculated to mislead the jury. We think the charge, as formulated, embodied a correct proposition of law, and if counsel desired further instructions eliminating the feature of negligence, the Court should have been requested to have given such an instruction. In the absence of such request there is no affirmative error in the charge as given.

The next assignment is, that the Court charged the jury, viz.: "If you believe that the injuries

of the plaintiff were not genuine, but simulated or pretended, and if you should believe her own negligence was the proximate cause of the accident, or directly contributed thereto or its proximate cause, you can allow her no damages.'' The criticism by learned counsel upon this charge is, that if plaintiff's negligence was the proximate cause of the accident, or directly contributed to it as its proximate cause, the plaintiff could not recover, regardless of whether the injuries were real or simulated, and that it was misleading to connect the two things together, as if it were necessary for both to concur in order to defeat the plaintiff.

It ·may be conceded that this charge, abstractly considered, is erroneous, but it is not a reversible error. It was not claimed by defendant that the plaintiff's injuries were pretended or simulated. On the contrary, defendant's counsel admit in argument that the suffering and impaired health of plaintiff was the result of actual disease—to wit: hysteria— and we think the proof shows this condition of health was superinduced by this accident, ·or resulted from the fright caused by the falling of the beams. Indeed, counsel object to this charge for the reason that it was unjust to the defendant thus impliedly to put it in the attitude of making out its defense by assuming a position it did not assume, and did not attempt to prove. If the defendant had controverted, as a matter of proof, the genuineness of plaintiff's injuries, we can perceive how it might

Bridge Co. *v.* Barnes.

have prejudiced the bridge company to have required the concurrence of both propositions to defeat the plaintiff's action. But it being conceded that the plaintiff's injuries were real, we do not think defendant could have suffered from a charge which instructed the jury that if they believed the injuries of the plaintiff were not genuine, but were pretended or simulated, and if they believed the negligence of plaintiff was the proximate cause of injury, she could not recover.

Affirmed.