SMITH et ux. v. ROANE-ANDERSON CO. et al. No. 9—
207 S. W. (2d) 353.

Eastern Division. July 9, 1947.

Petition for Certiorari denied by Supreme Court, October 3, 1947.

Cates, Fowler, Long & Fowler, of Knoxville, for plaintiff in error.

Hodges & Doughty and Poore, Kramer, Cox & Overton all of Knoxville for defendant in error.

BURNETT, J. Mr. & Mrs. Smith sued Roane-Anderson Company and Tri-States Homes for the death of their fourteen months old daughter which is allegedly due to the negligence of the defendants.

At the conclusion of the plaintiff's proof the trial judge directed a verdict for the defendants. Necessary steps have been taken to bring the case to this court.

Mr. Smith was employed by one of the war industries at Oak Ridge. He rented a completely furnished home in the Oak Ridge area from Roane-Anderson Company. This company acting under contract with the United States Government rented, maintained and repaired the houses of the area among which was the one rented by Smith. A few days after Smith rented this house the Roane-Anderson Company appointed the Tri-States Homes Company as its agent to handle this property.

Among other household equipment furnished in this house was a coal burning stove which had been converted into a kerosene burning stove. This conversion was made before the Smiths rented the house. A similar conversion had been made by the government in many houses of the area. In making this conversion a small pipe had been run from the kerosene tank to the end of the stove where it entered the stove to the burners. At the point where the pipe entered the stove it connected with a standard affixed to the floor and at its point of entrance into the stove there were two valves used in regulating the flow of the fluid into the burners. Just above and between these valves a vent pipe protruded up and above the standard which was affixed to the floor. This vent pipe was open at the top. The top of this vent pipe was eighteen inches above the floor.

About two months after the Smiths had moved into this house their baby girl who was just beginning to walk and pull up on things, pulled up on this pipe and put her mouth over the end of this vent pipe and sucked the kerosene from the pipe. At the time her mother was in another part of this small house. The mother saw the child standing up by the pipe with her mouth over the vent. The vent was wet and kerosene came from the mouth of the child. This made the child deathly sick. She was rushed to a hospital where everything possible was done for her. She died three days later. As long as she remained alive kerosene could be smelled coming from her breath.

·Pretermitting all other questions, is there any actionable negligence shown or is there any inferable negligence shown in the above stated facts?

▇ We must start with the controlling premise, that:

"A landlord is liable to tenant on ground of *negligence, not of contract,* for an injury resulting from unsafe or dangerous condition of leased premises existing at date of lease, if landlord by reasonable care should have known, and for a greater reason, if he had actual knowledge, of condition of ·premises, . . ." 3rd headnote, Manes v. Hines & McNair Hotels, 184 Tenn. 210, 197 S. W. (2d) 889. (Emphasis ours)

▇ We also bear in mind that:

"To maintain an action for negligence, one must be able to show a duty owed to him by another, a breach of that duty, and injury from such breach. Every one owes to every one else the duty of exercising ordinary care not to injure him either in his person or property. Ordinary care is that degree of care which a person of reasonable prudence would exercise under a given state

of facts appearing in the evidence in a cause, or in a state of facts similar thereto. This ordinary care may be positive or negative; that is, it may consist of what a person of reasonable prudence would have done under the same or similar circumstances, ¹or of refraining from doing what he would have refrained from doing under these circumstances. What a person of reasonable prudence would have done under the same or similar circumstances must be determined by the jury from their knowledge of mankind, and of how persons of reasonable prudence usually deport themselves in relation to their surroundings.

"Whether ordinary care was exercised under any given or proven state of facts must always be determined in relation to and in the light of the facts themselves, since what is ordinary care under one state of facts may be less than or more than ordinary care under another and different state of facts. That is to say, a person of reasonable prudence will deem necessary a greater degree of caution and of attention to the circumstances surrounding himself, and the person with whom he is dealing, or with whose property he is dealing, where these circumstances are difficult to manage, and where a mistake is likely to result in serious injury, than where the circumstances are simple and uncomplicated, and easy to deal with, and where a mistake in such dealing will not have any serious consequences. This is equivalent to saying a person of reasonable prudence governs his conduct according to the nature, character, and gravity of the circumstances, or state of facts, or business, or part of department of business with which he has no deal.

"In determining whether the conduct of a defendant under a proven or given state of facts was characterized by the exercise of ordinary care, it is proper to prove the customary way of doing such things in the business in hand; but such evidence is not controlling. It is competent only to throw light on the question, since a customary way may be a negligent way, and at last the jury must determine whether under all of the facts the matter was managed in such a way as a person of reasonable prudence would have managed it." Nashville, C. & St. L. Railroad Co. v. Wade, 127 Tenn. 154, 158, 153 S. W. 1120, 1121, Ann. Cas. 1914B, 1020.

Webster defines "kerosene" as:

"A thin mineral oil used for burning in lamps, and also in oil stoves and some internal-combustion engines;—called also coal oil. It is produced by distillation, chiefly from petroleum but also from oil shale."

 Those of us of the older generation, and especially we who were raised in rural areas, well remember that "coal oil" was our only source of light at night. It was a standard necessity in all homes. A small can, open and accessible was always present. We never considered it dangerous in so far as children might drink it. We do not think any reasonable man would find it necessary to so guard this commodity as to place it out of reach of a child. Certainly nothing inherently dangerous can be found in an open kerosene container or in kerosene. In so far as this record shows there is nothing a reasonable prudent person would have done or refrained from doing. "The duty to use care arises from probabilities, rather than from bare possibilities, of danger." 38 Am. Jur., page 670. This is indeed an unfortunate accident. ". . . An accident is an oc-

currence that could not have been foreseen by a prudent person." Am. Jur., supra.

For the reasons assigned all errors are overruled and the trial court is affirmed.

Hale and McAmis, JJ., concur.