PAMELA MARIE BRACKMAN, b/n/f and father, WILLIAM C. BRACKMAN, v. WILLIAM L. ADRIAN, Bishop, etc., Defendant-Appellant. —472 S.W.2d 735.

Middle Section. February 26, 1971.

Certiorari Denied by Supreme Court October 4, 1971.

Glasgow, Adams & Taylor, Nashville, for defendant-appellant.

Leslie Mondelli, Charles Patrick Flynn, Nashville, for plaintiff-appellee.

## THE CASE

SHRIVER, P.J.(M.S.). Pamela Marie Brackman, a minor, b/n/f her father, William C. Brackman, sued the defendant, William L. Adrian, as Bishop representing the Roman Catholic Diocese of Nashville, to recover for personal injuries received while a student at St. Henry's School in Nashville, Tennessee, in an accident which occurred on the playground of the school April 6, 1967. At the time of the accident, plaintiff and some classmates were playing softball when she, acting as catcher, was struck in the face by a bat which the batter slung behind her after hitting the ball. Plaintiff who was 14 years old

at the time, received injuries which required extensive dental care covering an extended period of time.

The suit was tried in Division III of the Circuit Court of Davidson County before Judge Joe C. Loser, Jr., and a jury, and resulted in a verdict and judgment for plaintiff in the amount of $4,000.00. After a motion for a new trial was overruled, an appeal to this Court was duly perfected and assignments of error filed.

## THE FACTS

The plaintiff, Pamela Marie Brackman, was born February 21, 1953, and at the time of the accident in question, April 6, 1967, was a student in the 8th grade at St. Henry's School in Nashville, which school is operated by the Roman Catholic Diocese of Nashville of which William L. Adrian was Bishop.

Plaintiff was a member of a class of girls and, on the date in question, was participating in a softball game along with other members of her class as a part of the physical education and recreational program of the school. The grounds on which the game was being played were adjacent to the school building and, at the time in question, the boys in plaintiff's class were playing softball at the other end of the field. Mrs. Kay Conn, a teacher, was generally overseeing the activities of these boys and girls and was near the center of the field between the two games at the time plaintiff was injured.

Basic equipment for playing softball was provided by the school, although some students brought gloves and other personal equipment from home. Such equipment as they used was brought onto the field by the students who

chose the items they needed or desired in playing the game.

The teacher did not assign positions of play on the respective teams, but left such matters to the students themselves. On the occasion in question, plaintiff was captain of her team and was playing at the position of catcher behind the one at bat. At the time of plaintiff's injury, Becky Curley, another student, was at bat and after hitting the pitched ball and starting to run toward first base, she released the bat in such manner that it flew back and struck plaintiff in the face causing injury to her mouth and surrounding tissues, breaking some of her teeth and displacing others. She was given first aid at the school and taken to the emergency room at St. Thomas Hospital.

Suit was filed for $15,000.00 damages and the declaration charged in the first count that plaintiff's injuries were the direct and proximate result of improper supervision on the part of defendant's agents, and in the second count that plaintiff's injuries were caused by defendant's failure to provide a catcher's mask to protect her.

The defendant filed a special plea denying negligence in supervision and in failing to provide or require a catcher's mask for plaintiff's use. Said plea further alleged that the act of Becky Curley in throwing the bat was the sole and proximate cause of plaintiff's injuries which was an independent intervening cause and further that plaintiff had assumed the risk of injury in choosing her position in the ball game.

The essential facts are not in dispute. The questions raised by counsel in their briefs and arguments relate chiefly to the application of law to the facts.

Some of the testimony of the plaintiff herself is significant. For instance, she testified on direct examination:

"Q. Now will you tell the jury exactly in your own words, what happened on that day when you left the classroom to go outside to your phys-ed class?

A. I was the captain and we chose up teams and there [sic] was the catcher and she hit the ball and she slung the bat and she was running to first base and I was watching her, and all of a sudden the bat just hit my teeth.

Q. Now where was Mrs. Conn at this time? Do you remember?

A. Previously she had been in the middle of the field talking to Mr. Behan.

Q. Were there other classes out there on the field at that time?

A. Yes, there was a boys' softball game too and it was on the other side of us and they were in the middle, you know, middle of the field."

Plaintiff testified that she was active in sports, engaging in basketball, diving, swimming and baseball and that up until the time of the accident, she had played baseball a lot.

She was asked on direct examination where she was standing at the time of the accident; that is, how many feet behind the batter she stood, and she answered; "I can't say how many feet I was behind her because I really don't know."

She was then asked why she played catcher and she answered: "Because I was good at it," and she reiterated in answer to another question that she did not know how far behind the batter she was standing at the time of the accident, that she just knew she was behind her and that her purpose in being there was to catch the ball. When asked if her teacher, Mrs. Conn, told her to play at that position, she answered: "She didn't tell me anything."

Again, she was asked about her position at the time of the accident and testified as follows:

"A. I don't know if I was second or first catcher. I just know I was the catcher. It really didn't matter.

Q. Was it possible that there was another catcher in front of you?

A. There could have been."

She further testified:

"Q. And do you recall what you testified at that time?

A. I think I said I was pretty good at it.

Q. Do you recall saying you were the best coordinated girl there and you were able to throw the ball better than any of the others?

A'. I thought I was.''

She testified that she played softball at home. And her father testified that she was very athletic and that she played softball at home and sometimes played the position of catcher without a mask.

At another point, she reiterated that she played basketball, engaged in diving and swimming, and played tennis and that she was skilled in athletics.

A schoolmate of the plaintiff, Rhea Elkin, testified that she saw the accident; that Pam was playing at position of catcher, standing behind the batter at the time, but she did not state how far behind the batter Pam was when she was struck. She saw the batter ''turn loose of the bat'' and saw it strike Pam in the mouth. She also testified that, in addition to Pam, there were one or two others who were helping to catch the ball. She further testified that Pam was a good softball player, about the best one on the field, and that there were about 20 or 25 other girls there at the time.

Mrs. Kay Conn, the teacher, testified that on the occasion of the accident, she was standing in the middle of the athletic field so that she could keep an eye on both the girls and the boys who were playing separate games of softball; that another teacher was there with her also observing the play of these children and that she and the other teacher were in something of a supervisory capacity. She said that the school furnished the bats and balls and one or more catcher's masks but the children were not required to wear these masks; that the field on which the children were playing was about the size of a football

field. She also testified that Pam was a very athletic girl and excelled not only in softball, but other sports and was a leader on the athletic field.

## ASSIGNMENT OF ERROR

There is a single assignment of error as follows:

"The Trial Court erred in refusing to grant defendant's motion for a directed verdict made at the conclusion of all the proof on the grounds that the evidence was insufficient to support a verdict against defendant, the plaintiff having failed to prove any negligence on the part of defendant or that any act or omission of defendant, negligent or otherwise, was the proximate cause of the minor plaintiff's injury, and that the minor plaintiff voluntarily assumed the risk that resulted in her injury."

## OUR CONCLUSIONS

It is argued that the defendant's teachers were negligent in allowing the plaintiff to take a position behind the batter too close for reasonable safety.

In answer to this, it is urged that there is no proof in the record that places plaintiff at a definite position behind the batter or fixes her distance from the batter. We have examined the record with some care to determine what proof there is on this question. The plaintiff herself was not sure whether she was the first catcher or second catcher at the time; nor could she state how far behind the batter she was at the time the accident occurred. This same thing is true of the other witnesses. So that, we have no definite evidence as to the exact position occupied by the plaintiff at the time the accident occurred other than that she was close enough to be injured.

354

■ It is argued that the teacher who was in a supervisory capacity on the playground at the time should have foreseen that the plaintiff might be struck by a bat thrown by the batter and that she should have taken measures to prevent it. It seems to us that this is tantamount to saying that the teacher should not have allowed the plaintiff, or any child, to act as catcher behind the batter in any position usually occupied by such catcher. This is true because, from common knowledge which we have of a game as universally played as baseball and softball, if a catcher in a baseball game is going to effectively operate in that position, he or she must stand close to the batter to catch or stop the ball before it strikes the ground and as balls are pitched to the batter they are generally in a range from the shoulders to the knees of the batter. In the instance of 8th grade children, this is comparatively low so that the catcher would have to stand somewhere in a reasonable range behind the batter in order to catch the ball. Thus, if the teacher had been standing only a few feet away from the plaintiff at the time and had been watching every move she made, we cannot assert that the teacher would have been under the duty of moving the plaintiff to another position. In order to conclude that she should, we must speculate as to how far behind the batter plaintiff was at the time since we have no direct evidence on this point. All of this is to say that we are forced to the conclusion that the evidence does not support a finding of actionable negligence on the part of the teacher or teachers of the school who were in a supervisory capacity on the field at the time of plaintiff's injury.

As to the matter of requiring the catcher in a softball game to wear a mask, again we think it is common knowl-

edge that the very nature of the game in question calls for the use of a soft ball as opposed to the regulation hard baseball and we also know that this game, which is played by many thousands of youngsters throughout the country, contemplates the pitching of a slow ball rather than the fast curve ball such as is thrown by baseball pitchers in the regular game of baseball.

The evidence in the record before us indicates that plaintiff had played softball at home and at school many times, was a skilled player, and knew what she was doing. She testified that she had seen other batters sling the bat after striking the ball. There can be no question but that she was familiar with the risk she was taking when she got behind the bat to catch the ball. As is noted from the discussion and quotation of testimony hereinabove, the plaintiff was athletically inclined, was skilled at playing softball and experienced in that game and perhaps was as well aware of any risk that she was taking by playing as catcher as was her teacher who was there as supervisor. Thus, we find no satisfactory evidence of actionable negligence on the part of the school or its representatives in the failure to require the wearing of a mask by the plaintiff at the time she was playing the game and was injured.

As to the applicable law, we begin with the proposition that negligence is not to be presumed by a mere happening of an injury or accident and this is admitted by counsel for the plaintiff in their well-reasoned brief and argument.

There is no liability for the results of an accident that could not have been foreseen by a reasonably prudent

person. Prosser on the Law of Torts, 117 (2d Ed., 1955); Smith et ux. v. Roane-Anderson Co., 30 Tenn.App. 458, 207 S.W.2d 353.

■ A private school is not the insurer of the safety of its students. This has been held in numerous cases in many jurisdictions throughout the country. The failure of proper supervision of students is not sufficient to fix liability on the school unless it is also shown that such failure was the proximate cause of the plaintiff's injuries. This proposition has been announced in numerous cases in a number of jurisdictions.

■ We concur in a statement of the California Court of Appeals in Underhill v. Alameda Elementary School District, 133 Cal.App. 733, 24 P.2d 849, wherein it is said that it is a matter of common knowledge that children participating in games or any ordinary form of play may injure themselves and that no amount of precaution or supervision on the part of parents or others will avoid some such injuries, and the law does not make a school the insurer of the safety of pupils at play or elsewhere and that liability is not incurred by the school in the absence of negligence on the part of its officers or employees proximately contributing to the injury.

The rule is laid down in 78 C.J.S. Schools and School Districts sec. 321, p. 1333, that liability of a school and its authorities for injuries to children playing on the school ground attaches only if the injuries are the proximate result of the negligence or the failure to use ordinary care in such supervision.

In Nestor v. City of New York, 28 Misc. 2d 70, 211 N.Y.S.2d 975, the minor plaintiff was hit by a bat of a

fellow student while playing ball and it was said that the teacher was not supervising at the time but was distributing milk to the other students. In granting defendant's motion to dismiss the case, the Court stated:

"There is no requirement that the teacher have under constant and unremitting scrutiny the precise spots wherein every phase of play activity is being pursued; nor is there compulsion that the general supervision be continuous and direct. * * * Even if the teacher had had the game under steady observation and the measure of his supervision had been constant, an assumption that he could have anticipated what ensued would be without justifiable warrant. * * * The defendant should not be required to respond in damages to the plaintiff for the sudden, impulsive and spontaneous action of another participant in the game."

Again, we think the reasoning of the Court in Hawayek v. Simmons, 91 So.2d 49 (La.App.), is sound where the Court stated:

"No one will deny that a participant in almost any game or sport can be said, in legal contemplation, by the fact of his participation therein he assumes all risks incidental to the particular game or sport which are obvious and foreseeable."

Counsel for the plaintiff cite the case of Stehn v. Bernarr MacFadden Foundation, Inc., 434 F.2d 811, as being in support of the judgment in the case at bar, and they attach a report of the decision of the United States Court of Appeals for the Sixth Circuit in said case as an appendix to their brief and argument.

In said case involving the serious injury of a pupil at Castle Heights Military Academy in Lebanon, Tennessee, who was engaged in wrestling at the time of his injury, it was shown that he suffered a broken neck and a severed spinal chord as a result of the application of a particular hold or maneuver in the wrestling exercises which were under the direct supervision of the wrestling instructer of the school. From reading the Opinion we are convinced that the case is readily distinguishable from the case at bar. The student who was so seriously injured in the wrestling exercise was subjected to a maneuver which was referred to as the ''agura'' or ''agura hold'', and no witness, including those qualified as experts in the field of wrestling, were familiar with the term, and it was not to be found in the standard works on the sport of wrestling. It appears that the term ''agura'' was more of a maneuver than a hold, and a description of it and the way it was executed indicate that it was calculated to be a dangerous maneuver. And the pupils were not instructed as to its danger nor were steps taken by the coach, or the one supervising the wrestling match, to see that this dangerous exercise was carried out in a manner to minimize the danger.

Thus, as above stated, we think the Stehn case, in which there was a large judgment against the school, is distinguishable from the case at bar.

It is insisted by defendant that this young lady assumed the risk of injury such as that received by her when she entered the game and voluntarily assumed the position of catcher.

The applicable law has been stated in several reported Tennessee cases wherein minor plaintiffs sought recovery for injuries received.

In Ballow v. Postal Tel. Cable Co., 12 Tenn.App. 348, it was held:

"Children between the ages of seven and fourteen years may or may not be guilty of contributory negligence, depending upon their mental development, experience and other circumstances; the presumption being that incapacity continues during this period; but the presumption is that a person over fourteen years of age may take care of himself the same as if he were a grown person, and his contributory negligence may bar a recovery."

In Manning v. American Clothing Co., 147 Tenn. 274, 247 S.W. 103, it was said:

"Whether an employee ten days short of fourteen years of age was guilty of contributory negligence in stepping into an elevator shaft, while employed in a factory in violation of Acts 1911, Chapter 57, and Acts 1917, Chapter 77, *held* for the jury."

Again, in West v. Southern Ry. Co., 20 Tenn.App. 491, 100 S.W.2d 1004, it was stated:

"Child between ages of seven and fourteen may or may not be capable of appreciating danger and exercising proper care in reference to it, depending on mental development, experience, and other circumstances."

Thus, since the plaintiff in the case at bar had passed her fourteenth birthday, it would seem that she might be held to have been guilty of contributory negligence as a matter of law, or, might be said to have assumed the risk

of injury when she chose to act as catcher in the softball game.

However, it may be plausibly argued that this is a jury question under all the circumstances shown by the proof. Thus, since we have determined that the record does not contain any substantial, material evidence that the teachers and school authorities failed in their duty to exercise such care in regard to plaintiff at the time of her injury as ordinarily prudent persons would have exercised, we find it unnecessary to decide the question of assumption of risk.

It results that the assignment of error is sustained, the judgment of the Trial Court is reversed and the action dismissed.

Reversed and case dismissed.

Puryear and Todd, JJ., concur.