IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 21, 2004 Session

## NICKO ALFREDO SANTIAGO, ET AL. v. JOY COOPER, ET AL.

**Direct Appeal from the Circuit Court for Weakley County**
**No. 3796     William B. Acree, Judge**

_____

**No. W2003-01882-COA-R3-CV - Filed May 18, 2004**

_____

Plaintiff, a minor student, brought suit for damages arising from an eye injury he sustained during recess at school. The Defendants, which are both governmental entities, moved for summary judgment, arguing that they are immune from suit and that Plaintiff cannot, as a matter of law, establish the elements of his negligence claim. After conducting a hearing, the trial court granted the Defendants summary judgment on both grounds. For the following reasons, we affirm the ruling of the lower court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Charles L. Hicks, Jason W. Pearcy, Camden, TN, for Appellant

B. Duane Willis, Jeffery G. Foster, Jackson, TN, for Appellees

**OPINION**

**Facts and Procedural History**

The events at issue in this case occurred at Dresden Elementary School in Weakley County, Tennessee, where Nicko Santiago ("Plaintiff") was a student in the kindergarten class of Ms. Joy Cooper ("Cooper"). On May 6, 2001, inclement weather prevented Cooper from holding recess on the outdoor playground. As was the common practice at that time, Cooper conducted recess indoors, instead. Specifically, Cooper's class and the class of Ms. Carla Hutcherson ("Hutcherson"), which are adjacent, conducted recess together in the hallway between the two classrooms. The two classes, which numbered approximately forty students, played with age-appropriate toys provided by the school, while under the supervision of both Cooper and Hutcherson. During recess on this date, in the course of playing, a fellow student hit Plaintiff in the eye with a plastic toy hammer. It is unclear

from the record whether the student hit Plaintiff directly in the eye or if the hammer ricocheted off another toy and then struck Plaintiff. Both teachers, however, maintain that the students had been warned not to use the plastic hammer to strike other toys and, further, that no student had ever used it to directly strike a classmate.

After Plaintiff sustained his eye injury, which occurred at approximately 11:50 A.M., he was examined by Cooper. Plaintiff was unable or unwilling to open his eye at the time, though there was no visible wound to the eyelid. Cooper placed a wet towel on Plaintiff's eye and had him lie on a resting mat. She subsequently left the two classes in Hutcherson's care and phoned Plaintiff's grandmother, Ms. Rhonda Montalvo ("Montalvo") to alert her of the incident. There is some debate as to when Cooper contacted Montalvo. Plaintiff maintains that the call was not placed until after 1:00 that afternoon, while Cooper insists that the call occurred at 12:45 P.M. After Montalvo was alerted, she came to the school and took Plaintiff to receive immediate medical care. Despite this initial treatment, Plaintiff was unable to see out of the injured eye. This necessitated additional medical care, which continues to the present, totaling over $45,000. Despite this treatment, Plaintiff still has no vision in the damaged eye.

On August 16, 2001, Plaintiff filed suit for damages, alleging that Cooper and Hutcherson were negligent in their supervision. In addition, he sued Mike Laughrey, the principal of Dresden Elementary School, and Richard Barber, School Superintendent of Weakley County, for the negligent hiring and/or supervision of Cooper and Hutcherson. Finally, Plaintiff sued both Weakley County and the Weakley County Board of Education ("Board of Education") for the alleged negligence of their employees. On March 20, 2002, those defendants named as individuals – Cooper, Hutcherson, Laughrey, and Barber – were all dismissed by an Agreed Order of Dismissal. Accordingly, only Weakley County and the Board of Education remain as defendants (collectively "the Defendants"). Plaintiff maintains that these two entities are liable, under Tenn. Code Ann. § 29-20-205, for the alleged negligence committed by their employees in the scope of their employment. The Defendants then filed a motion for summary judgment on December 30, 2002. In their motion, the Defendants raised several grounds for summary judgment. First, they argued that all decisions regarding the hiring and allocation of teachers are discretionary decisions that are immune from suit . Next, they argued that the actions of Cooper and Hutcherson were also discretionary and, in the alternative, did not constitute negligence as a matter of law. After conducting a hearing on July 10, 2003, the trial court granted the Defendants' motion based on findings that (1) the manner in which the recess was conducted is a discretionary function; (2) the accident was not forseeable; and (3) Plaintiff failed to establish causation. Plaintiff then timely appealed the ruling of the lower court, raising the following issues, as we perceive them, for our consideration:

I.    Whether the trial court erred in granting summary judgment based, in part, on its finding that the hiring and allocation of teachers is a discretionary function immune from suit.

II.    Whether the trial court erred in granting summary judgment based, in part, on its finding that Plaintiff failed to establish the elements of his negligence claim.

III.     Whether the trial court erred in failing to find that the doctrine of *res ipsa loquitur* applies.

## Standard of Review

In *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83 (Tenn. 2000), the Tennessee Supreme Court set forth the standards governing appellate review of a trial court's grant of summary judgment:

> Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

*Staples*, 15 S.W.3d at 88.

## Doctrine of Discretionary Function

Tenn. Code Ann. § 29-20-205 provides that governmental immunity from suit is removed for injury proximately caused by the negligence of any governmental employee in the scope of his employment, unless the injury arises out of the exercise of a discretionary function. In *Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn. 1992), the Tennessee Supreme Court set forth the "planning-operational test" to provide guidance in determining whether an act of a governmental employee is a discretionary function:

> Under the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity. *See Carlson v. State*, 598 P.2d 969, 972 (Alaska 1979) . . . . Under the planning-operational test, discretionary function immunity does not automatically attach to all acts involving choice or judgment. Such an analysis recognizes that, to some extent, every act involves discretion. Rather, the underlying policy of governmental immunity is better served by examining (1) the decision-making process and (2) the propriety of judicial review of the resulting decision . . . . A consideration of the decision-making process, as well as the factors influencing a particular decision, will often reveal whether that decision is to be viewed as planning or operational. If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision.

These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules. *See id.* On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies.

*Bowers*, 826 S.W.2d at 430-31.

We turn now to an examination of whether the acts by the various government employees in this case fall within the discretionary function exception of the Tennessee Governmental Tort Liability Act. The acts under consideration include (1) Superintendent Barber's delegation of decision-making authority regarding recess to Principal Laughrey; (2) Laughrey's decision to hold recess indoors during inclement weather, with two teachers assigned to supervise approximately 40 students; and (3) the numerous decisions made by Cooper and Hutcherson in the course of supervising their students during recess. In its order granting the Defendants' motion for summary judgment, the trial court found that "the manner in which the recess was handled, which includes the number of teachers assigned to supervise a recess, was a discretionary function, which does not remove governmental immunity." After reviewing the record in light of the relevant authority, we cannot agree that all the acts involved in conducting the recess were discretionary functions immune from suit.

As an initial matter, we find that Superintendent Barber's delegation of decision-making authority to Principal Laughrey clearly falls within the discretionary function exception. As superintendent for all public schools in Weakley County, Barber is constantly required to make decisions resulting from "assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules." *Id.* at 431. Barber's delegation of authority to school principals is one such decision. It creates a county-wide policy that reflects a balance of the needs and resources of the schools under his supervision. As such, Barber's delegation of authority is properly characterized as a discretionary function. *Id.* Likewise, Principal Laughrey's decision to hold recess indoors and assign two teachers to approximately 40 students falls within the discretionary function exception. In *Chudasama v. Metro. Gov't of Nashville and Davidson County*, 914 S.W.2d 922 (Tenn. Ct. App. 1996), we considered whether a school principal's assignment of one male teacher to a coed gym class was a discretionary function. We held in the affirmative: "The assignment of teachers appears to be . . . a discretionary function. We cannot find Metro Government liable for injuries that may have resulted from [the principal's] efforts to allocate the limited resources under his control to meet the broad supervisory and instructional needs of the student body." *Id.* at 925. In the present case, Laughery's determinations regarding the location and supervision of recess reflect the very same efforts to allocate resources and fulfill the needs of the student body. As such, we find that any action taken by Laughery regarding recess falls within the discretionary function exception and is, therefore, not actionable.

Finally, we must determine whether the actions of Cooper and Hutcherson also constitute discretionary functions. Specifically, we must review the teachers' decision to allow the children to play with the plastic toy hammer, their general supervision of the students, and their care for Plaintiff immediately following his eye injury. Using the "planning-operational test" set forth in *Bowers*, we find that the actions of these two teachers, unlike those of the school principal and the superintendent, are operational acts rather than discretionary functions. Their actions reflect the type of ad hoc decisions characterized in *Bowers* as operational acts. Focusing on the policy underlying governmental immunity, we note that, in supervising recess, neither teacher is engaged in the type of act "'committed to coordinate branches of the government involving policy decisions not reviewable under traditional tort standards of reasonableness.'" *Bowers*, 826 S.W.2d at 430 (quoting *Peavler v. Bd. of Comm'rs*, 528 N.E.2d 40, 45 (Ind. 1988)). Instead, their decisions regarding the use of toys at recess and the care of an injured student fall squarely within the purview of traditional tort analysis. As such, we hold that the acts of Cooper and Hutcherson are operational acts, which, if performed negligently, may serve as the basis for governmental liability. We now turn our attention to the substance of Plaintiff's negligence claim.

## Negligent Supervision

In order to succeed in his negligence claim, Plaintiff must prove the following elements: (1) the duty of care owed by the Defendants; (2) breach of this duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). In *Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863 (Tenn. 1985), the Tennessee Supreme Court made clear that teachers and local school districts are not expected to be insurers of their students' safety while at school. *Roberts*, 692 S.W.2d at 870. Instead, the Court held that school teachers must exercise such care as a reasonable and prudent person would exercise under the same or similar circumstances. *Id.* This level of supervision required under this standard of care can vary, depending on the age and experience of the students, their maturity, and the dangers to which they might be exposed. *Id. See also Schorn v. Oak Ridge Schools*, 1989 WL 109475, at *2 (Tenn. Ct. App. June 20, 1989).

In the present case, there are two acts by Cooper and Hutcherson that are allegedly negligent. The first is their failure to prevent the students from playing with the plastic toy hammer or, in the alternative, to supervise its use in such a way as to prevent injury. In its order, the trial court found that this failure to act did not constitute negligence because the accident involving the hammer was not foreseeable. We agree. Foreseeability is an essential element of proximate causation, which, in turn, is essential to a negligence claim. *Roberts*, 692 S.W.2d at 871 (citing *Ford Motor Co. v. Eads*, 457 S.W.2d 28, 32 (Tenn. 1970)). "If the injury giving rise to the action could not have been reasonably foreseen or anticipated, then there is no proximate cause." *Id.* (citing *Ray Carter, Inc. v. Edwards*, 436 S.W.2d 864, 867 (Tenn. 1969)). In the context of school teachers, we do not require them to anticipate the countless unexpected student acts that take place each day in our schools. *Id.* We do, however, hold teachers to the duty of protecting students from reasonably foreseeable dangerous conditions, including the dangerous acts of fellow students. *Id.*

After reviewing the facts of this case, taken in the light most favorable to Plaintiff, we find that the injury to Plaintiff's eye was not foreseeable. We note that the object that caused the injury is not a dangerous instrumentality, as was the case in *Roberts*. In *Roberts*, a student suffered severe head injuries when a bit from a drill press struck him while it was being used by an unsupervised classmate. *Id*. Here, the cause of injury is a plastic toy hammer, which is an age-appropriate toy specifically designed for young children at play. Additionally, it is undisputed that an accident of this nature, involving an injury caused by an age-appropriate toy, has never occurred at Dresden Elementary School. We would be placing an unrealistic burden of foresight upon teachers if we asked them to anticipate every possible injury that could occur while young children play together. As we stated in *Brackman v. Adrian*, 472 S.W.2d 735 (Tenn. Ct. App. 1971):

> [I]t is a matter of common knowledge that children participating in games or any ordinary form of play may injure themselves and that no amount of precaution or supervision on the part of parents or others will avoid some such injuries, and the law does not make a school the insurer of the safety of pupils at play or elsewhere . . . .

*Id*. at 739. Accordingly, we affirm the trial court's finding that Cooper and Hutcherson were not negligent in failing to prevent the injury to Plaintiff's eye, which was the result of an unforeseeable accident.

We will next address Plaintiff's contention that the actions of Cooper and Hutcherson immediately following his eye injury were negligent. Plaintiff focused almost exclusively on the teachers' alleged delay in contacting his grandmother, Ms. Montalvo. He argued that the delay exacerbated his injury by postponing emergency medical treatment. The trial court, however, found that Plaintiff failed to present any evidence demonstrating that the teachers' alleged delay exacerbated his eye injury. Accordingly, the lower court found that Cooper and Hutcherson were not negligent as a matter of law. Our review of the record leads us to the same conclusion. Plaintiff presented no evidence demonstrating that the alleged delay in procuring medical treatment worsened his eye injury. This constitutes a failure by Plaintiff to carry his burden regarding causation, an essential element of a negligence claim, and makes a grant of summary judgment appropriate. *See Byrd v. Hall*, 847 S.W.2d 208, 212-13 (Tenn. 1993). We, therefore, affirm the ruling of the trial court on this matter.

### Res Ipsa Loquitur

The doctrine of *res ipsa loquitur* permits the inference of negligence where the thing causing the injury is shown to be under the control of the defendant, and the accident is of the kind that does not ordinarily happen if those having control use proper care. *McConkey v. State*, 128 S.W.3d 656, 659-60 (Tenn. Ct. App. 2003). In his final issue on appeal, Plaintiff maintains that the trial court erred in failing to find that the doctrine applies here. He argues that Cooper and Hutcherson had exclusive control of the plastic toy hammer, or the student using it, and that young children are not ordinarily injured during play if proper care is used. We disagree. The toy hammer was in the possession and control of Plaintiff's fellow student at the time of the injury. With respect to

teachers' control over students, we have previously held that they enjoy "exclusive custody and supervision," but not exclusive power to control the students' every action. *Ferguson v. Metro. Gov't of Nashville and Davidson County*, No. 01-A-01-9211-CV00434, 1993 WL 115661, at *3 (Tenn. Ct. App. Apr. 16, 1993). Without exclusive control over the toy hammer, or at least over the actions of the child wielding the toy, neither Cooper nor Hutcherson can be found to have been negligent under *res ipsa loquitur*. Accordingly, the trial court did not err in finding the doctrine inapplicable in the present case.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Nicko Santiago, by and through his next friends and grandparents Alfredo Montalvo and Rhonda Montalvo, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE