# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 3, 2014 Session

## PETROS GOUMAS v. JIMMY MAYSE ET AL.

**Appeal from the Circuit Court for Rhea County**
**No. 2011-CV-228    J. Curtis Smith, Judge**

---

**No. 2013-01555-COA-R3-CV-FILED-APRIL 29, 2014**

---

The issue in this slip-and-fall premises liability case is whether the trial court correctly granted summary judgment to the defendants. Petros Goumas ("plaintiff"), the fiancé of the daughter of defendants Jimmy Mayse and wife, Barri Mayse, was staying at the defendants' house for an extended visit. Plaintiff was working outside in the yard, helping to clear away dead brush and trees from the property, when he stepped on a rock, slipped, fell, and broke his arm. The trial court held that plaintiff presented no proof that the rock (1) was in any way unusual or posed any particular danger, (2) was hidden or concealed, or (3) created any kind of defective or dangerous condition. The court concluded that there was no proof of a known or foreseeable unreasonable risk of injury created by the condition of defendants' property. Consequently, the court held, as a matter of law, that defendants owed no duty to plaintiff. He appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Carol Ann Barron, Dayton, Tennessee, for the appellant, Petros Goumas.

Paul Campbell, III, Chattanooga, Tennessee, for the appellees, Jimmy Mayse and Barri Mayse.

# OPINION

## I.

The following facts are taken from the defendants' Tenn. R. Civ. P. 56.03 statement of undisputed material facts. At the time he filed his complaint, plaintiff was a 21-year-old resident of Elk River, Minnesota. He was engaged to Dina Mayse, defendants' daughter. Prior to the accident, which occurred on May 20, 2010, plaintiff had stayed at the defendants' residence for at least three extended visits. Plaintiff spent five to ten days visiting defendants' home in December 2007, and spent a couple of weeks there in the summer of 2008.

In September 2009, the local electric power board cleared its power line easement that crossed defendants' property, cutting down numerous trees and brush. Despite a promise from power board representatives that they would remove the brush and dead trees, the power board had not done this by the summer of 2010. Consequently, defendants – primarily Barri Mayse, Dina's mother – began to clear the property themselves, dragging the brush and trees from the easement area to the road where it could be disposed of. Plaintiff spent about three months visiting the defendants' home in the summer of 2010. On May 20, plaintiff was working outside on defendants' property helping to clear the debris. He was working alone at the time he fell. It was daylight, not raining, and dry at the time of the accident. Plaintiff dragged a small tree close to the driveway, put it down, took several steps, slipped on a rock, and fell, breaking two bones in his right arm. Plaintiff had worked on the property at this location on three previous occasions and he knew where the rock on which he slipped was located.

On April 27, 2011, plaintiff filed this action alleging that the "[d]efendants knew of the unreasonable dangerous condition" – the rock in their yard that plaintiff stepped on – "and neither corrected nor warned the [p]laintiff of it." Defendants moved for summary judgment, relying upon their affidavits and the discovery deposition of plaintiff. The trial court granted summary judgment in its order stating the following:

> At the time of the injury, Plaintiff was on an extended stay at Defendants' home and he had visited in Defendants' home on multiple occasions, sometime[s] for days or weeks at a time, and he was familiar with said property;
>
> At the time of his injury, Plaintiff had volunteered/or agreed to assist in cleaning brush from the property;

Plaintiff's injury occurred when he stepped on a rock, slipped and fell;

Plaintiff has presented no proof that the rock was in any way unusual or posed any particular danger;

Plaintiff has presented no proof that the rock was hidden or concealed;

Plaintiff has presented no proof that the rock created any kind of defect, danger or trap;

Plaintiff has presented no proof that the Defendants knew or should have known of the rock's existence or location;

Plaintiff has presented no proof that the Defendants' property presented him with any known or foreseeable risk of injury.

Under the facts presented, the Court finds as a matter of law that Defendants owed no duty to the Plaintiff and therefore breached no duty to the plaintiff.

(Numbering in original omitted.)  Plaintiff timely filed a notice of appeal.

## II.

The issue on appeal is whether the trial court erred in granting summary judgment on the court's announced ground that defendants owed plaintiff no legal duty under the undisputed facts.  Plaintiff phrases the issue as a statement in his appellate brief, which we quote as follows: "The trial court erred in finding that the [defendants] owed no duty of care to the [plaintiff,] who was visiting at their home and [was] asked to assist in the removal of trees and debris on their property[,] exposing [plaintiff] to a substantial risk of harm that was foreseeable and unreasonable, thereby imposing a duty of care on the [defendants]."

## III.

Our standard of review of a trial court's grant of summary judgment is well established.  It was recently reiterated by this Court as follows:

[T]he standard of review of a trial court's award of summary judgment promulgated by the [S]upreme [C]ourt in ***Hannan v. Alltel***, 270 S.W.3d 1 (Tenn. 2008) and ***Martin v. Norfolk Southern Railway Co.***, 271 S.W.3d 76 (Tenn. 2008) is applicable to this matter where [plaintiff] filed her complaint prior to July 1, 2011. We review a trial court's award of summary judgment *de novo* with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. ***Norfolk S. Ry. Co.***, 271 S.W.3d at 84 (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***Id.*** at 83 (quoting Tenn. R. Civ. P. 56.04; accord ***Penley v. Honda Motor Co.***, 31 S.W.3d 181, 183 (Tenn. 2000)). The burden of persuasion is on the moving party to demonstrate, by a properly supported motion, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. ***Id.*** (citing . . . ***Staples v. CBL & Assocs., Inc.***, 15 S.W.3d 83, 88 (Tenn. 2000); ***McCarley v. W. Quality Food Serv.***, 960 S.W.2d 585, 588 (Tenn. [1998]); ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). The nonmoving party's "burden to produce either supporting affidavits or discovery materials is not triggered" if the party moving for summary judgment fails to make this showing, and the motion for summary judgment must be denied. ***Id.*** (quoting ***McCarley***, 960 S.W.2d at 588; accord ***Staples***, 15 S.W.3d at 88). The moving party may carry its burden by "(1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." ***Id.*** (citing ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008)); *see also* ***McCarley***, 960 S.W.2d at 588; ***Byrd***, 847 S.W.2d at 215 n. 5). Additionally, a mere "assertion that the nonmoving party has no evidence" will not suffice. ***Id.*** at 84 (citing ***Byrd***, 847 S.W.2d at 215). "[E]vidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." ***Id.*** (citing ***McCarley***, 960 S.W.2d at 588). Rather, "[t]he moving party must either produce evidence or

-4-

refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citing ***Hannan***, 270 S.W.3d at 5). In order to negate an essential element, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." ***Id.*** at 84 (citing . . . ***Blair v. W. Town Mall***, 130 S.W.3d 761, 768 (Tenn. 2004)). The motion for summary judgment must be denied if the moving party does not make the required showing. ***Id.*** (citing ***Byrd***, 847 S.W.2d at 215).

After the moving party has made a properly supported motion, the nonmoving party must "produce evidence of specific facts establishing that genuine issues of material fact exist." ***Id.*** (citing ***McCarley***, 960 S.W.2d at 588; ***Byrd***, 847 S.W.2d at 215). To satisfy its burden, the nonmoving party may: (1) point to evidence of over-looked or disregarded material factual disputes; (2) rehabilitate evidence discredited by the moving party; (3) produce additional evidence that establishes the existence of a genuine issue for trial; or (4) submit an affidavit asserting the need for additional discovery pursuant to Rule 56.02 of the Tennessee Rules of Civil Procedure. ***Id.*** (citing ***McCarley***, 960 S.W.2d at 588; accord ***Byrd***, 847 S.W.2d at 215 n. 6). The court must accept the nonmoving party's evidence as true, resolving any doubts regarding the existence of a genuine issue of material fact in that party's favor. ***Id.*** (citing ***McCarley***, 960 S.W.2d at 588). " 'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.' " ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (quoting ***Byrd***, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.' " ***Id.***

***Ms. B. v. Boys and Girls Club of Middle Tenn.***, No. M2013-00812-COA-R3-CV, 2014 WL 890892 at *2-3 (Tenn. Ct. App. M.S., filed Mar. 6, 2014).

IV.

Plaintiff's cause of action is one of negligence. "In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.' " *Giggers v. Memphis Housing Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). "The first element, that of duty, and the dispositive issue in this case, is the legal obligation of a defendant to conform to a reasonable person's standard of care in order to protect against *unreasonable risks of harm*." *Id.* (emphasis added); *accord Cullum v. McCool*, No. E2012-00991-SC-R11-CV, 2013 WL 6665074 at *3 (Tenn., filed Dec. 18, 2013). Whether a defendant owes a plaintiff a duty of care is a question of law to be determined by the court. *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005); *see Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008) ("In the end, whether a defendant owed or assumed a duty of care to a plaintiff is a question of law for the court to decide.").

In analyzing the question of duty, "the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). In *Rice*, the Supreme Court observed that "[a] risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* (quoting *McCall*, 913 S.W.2d at 153 (internal quotation marks omitted)). The *Rice* Court provided the following guiding principles in a negligence action based on premises liability:

> In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994).

\*     \*     \*

The *duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against "conditions from which no unreasonable risk was to be anticipated*, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Prosser and Keeton on Torts, supra,* § 61 at 426 [5th. ed. 1984]. In this regard, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id.* at 426-27.

*Id.* at 308-09 (footnote omitted; emphasis added). Accordingly, we have observed that,

for an owner or occupier to be found negligent, there must be some evidence that there was a dangerous or defective condition on the premises. A jury cannot conclude that an owner or occupier failed to exercise reasonable care to prevent injury to persons on their property if there is no evidence of a dangerous or defective condition. *If no dangerous or defective condition exists, an owner or occupier cannot be held liable for failing to take action in order to remedy the supposed condition*.

*Nee v. Big Creek Partners*, 106 S.W.3d 650, 653-54 (Tenn. Ct. App. 2002) (emphasis added). The Supreme Court has further held that in a premises liability case,

[i]n order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

*Blair v. W. Town Mall*, 130 S.W.3d at 764.

In the present case, defendants argue that the undisputed proof establishes that the alleged danger, the rock, was so readily observable, and not hidden or concealed from view in any way, that the "open and obvious" doctrine should apply to bar recovery. In the

landmark case of ***Coln v. City of Savannah***, the Supreme Court examined and modified the traditional rule that "a premises owner has no liability for injuries sustained from dangers that were obvious, reasonably apparent, or as well known to the invitee [or licensee] as to the owner." 966 S.W.2d 34, 40 (Tenn. 1998) (brackets in original; internal quotation marks omitted). The High Court stated:

> [T]he manifest trend of the courts in this country is away from the traditional rule absolving, *ipso facto*, owners and occupiers of land from liability for injuries resulting from known or obvious conditions.
>
> Nearly every jurisdiction has also relied upon the Restatement (Second) of Torts, § 343A, which states the rule as follows:
>
>> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*.
>
> (Emphasis added). The word " 'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves," and the word " 'obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts, § 343A (comment b). The restatement further provides that the premises owner's duty exists if the harm can or should be anticipated notwithstanding the known or obvious danger:
>
>> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to

-8-

expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in his position the advantages of doing so would outweigh the apparent risk.

Restatement (Second) of Torts, § 343A (comment f). As the Michigan Supreme Court has said: "If the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the [defendant] is required to undertake reasonable precautions [and] the issue then . . . is for the jury to decide."

*Id.* at 41 (internal quotation marks and citations omitted; italics in original). The ***Coln*** Court concluded:

We deem the Restatement approach to be the better reasoned and more persuasive analysis. The principles stated in the Restatement (Second) of Torts, § 343A relate directly to foreseeability and facilitate consideration of the duty issue. Whether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm, are all relevant considerations that provide more balance and insight to the analysis than merely labeling a particular risk "open and obvious." In sum, the analysis recognizes that a risk of harm may be foreseeable and unreasonable, thereby imposing a duty on a defendant, despite its potentially open and obvious nature.

\* \* \*

To summarize, we join those jurisdictions that have limited the open and obvious doctrine in favor of the Restatement approach. That a danger to the plaintiff was "open or obvious" does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343A relate directly to the foreseeability question; in short, if the

foreseeability and gravity of harm posed from a defendant's conduct, even if "open and obvious," outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Id*. at 42-43.

Bearing in mind these applicable legal principles, we examine the proof presented in this case. The defendants each filed an affidavit, identical in substance, that stated the following in pertinent part:

> In September 2009, the Electric Power Board cleared its power easement that crossed our property. In the process they cut down numerous trees and brush that they promised to remove. However, when the Power Board finished its work, it did not remove the debris.
>
> At some point on or before the summer . . . of 2010, we began to pull the brush and debris left by the Power Board away from the easement to where it could be disposed of.
>
> Following my daughter's graduation from Austin Peay State University in May 2010, she and [plaintiff] came to our house and stayed there for two to three weeks. We were still in the process of removing the debris left by the power board from the right-of-way.
>
> [Plaintiff] volunteered to help pull some of the small trees, limbs, and debris left by the Power Board off of our property where it could be disposed of.
>
> My [spouse] and I were inside our home at the time of the accident that is the subject of this suit. The trees, shrubs, and debris that [plaintiff] was attempting to pull to the road at the time he fell were those cut by the Power Board and left on our property. The fall occurred in broad daylight, and there was nothing hidden or concealed about the area where [plaintiff] was working at the time he injured himself.

(Numbering in original omitted.)

Plaintiff testified regarding the circumstances on the day of his accident in his deposition, stating as follows in pertinent part:

Q: [Y]ou have described [defendants'] property as about 8 acres with a wood[ed] slope behind the home, and it turns into a yard and slopes down to the lake. Is that a fair description of it?

A: Yeah.

Q: All right. Has it been that way ever since you have seen it?

A: Yeah.

*     *     *

Q: Now, the area where you fell was up behind the house?

A: No. It was along the driveway. . . . It's the front of the house, so it's . . .

Q: In front of the house?

A: Yeah.

Q: Okay. And that area, is that level, flat, up and down?

A: No. It's kind of – it's not a steep slope, but – yeah, it's kind of –

Q: It's not steep, but it's what?

A: It's a small slope, kind of.

Q: Small slope?

A: Yeah.

*     *     *

-11-

Q: Was the power company actually working on the easement when you were here in 2010?

A: No.

Q: They had just come and cut it and let it lie and left?

A: Yeah. Apparently they were supposed to clean them up right afterwards, but it had been, I want to say couple of weeks to a month, and Mrs. Mayse had been trying to move them on her own. And, you know, they were housing me while I was there, so I thought I'd lend a hand.

* * *

A: Mrs. Mayse was taking care of it herself with a little chain saw that she used, because she couldn't drag. She said that if we ever wanted to get out there and help, we were welcome to.

Q: I say that to my children, too, all the time, and sometimes don't get any takers.

A: Yeah. And that's about it. I offered my help, because I was – I wanted to – felt like I needed to repay them for letting me stay there during the summer.

* * *

Q: How many occasions had you done work out there on this easement before the date you fell?

A: Probably two or three times.

Q: Okay. On two or three different days?

A: Yeah.

* * *

-12-

Q: [At the time of the accident] you said it was still daylight, but the sun was –

A: Yeah.

Q: But the sun was going down?

A: Yeah. It wasn't real far down. It was just enough to cool it down outside. . . . [Dina] came out when I was getting ready to pull the second tree out into the driveway. And I had it, maybe, in the middle of the driveway a little bit, because it was really a long tree.

Q: And were you in the middle of the driveway with it?

A: No. I wasn't in the middle of the driveway. I just had it kind of pushed out that far. And as she came walking by, I was greeting her and all that, and I was going to walk down into the driveway, grab the end of the tree, and start hauling it back when I fell and broke my arm.

* * *

Q: At the time you fell, you had been going down a hill?

A: Yeah.

Q: A slight slope?

A: Yeah, a slight slope.

* * *

Q: Were you standing on grass when you fell or –

A: No. I kind of slipped on a rock that was – because it was kind of like a – this slope was kind of a rocky terrain going up, misplaced rocks and stuff, and I misstepped on a rock and fell.

Q: You misstepped on the rock?

-13-

A: Yeah.

Q: Okay. The rock didn't move or –

A: No.

Q: Okay. Was it a small rock, a large rock, a boulder?

A: Not a boulder. It was a sizable rock. Probably, I'd say 12 inches or so.

Q: And was the top of the rock flush with the ground, or did it stick up above the ground?

A: Kind of stuck up above the ground a couple of inches.

Q: Okay. So this rock was, say, 12 inches. Well, I mean, was it a heavy rock if picked up?

A: It looked like a big rock. It was kind of a fatter rock, because *I noticed it before I stepped* – because there was nowhere else to step. It was either I drop or ease myself on the rocks and such.

Q: Okay. And is this the same path you had been pulling trees –

A: Yeah.

Q: All four times?

A: Yeah. But it was the biggest clearing between the other trees, *so that's what I had been walking on the entire time.*

Q: Okay. *You had been stepping on this rock?*

A: *Probably, yeah.*

Q: *Repeatedly?*

A: *Yeah.*

-14-

Q: *It's this one time you just lost your footing*?

A: *Yeah*.

Q: Was it wet or –

A: No. It wasn't wet. Probably, I think, it had some moss on it.

Q: Same moss that would have been there all the previous times?

A: Yeah.

* * *

Q: [L]ooking back on it, do you have any insights into why you fell?

A: *Just an unlucky misstep*.

Q: Turn your ankle or something, roll your ankle or something like that, or did you just step partially on the rock and lost your balance?

A: I can't – I don't know for sure if any of those were factors, not that I can recall.

* * *

Q: Now, you have sued her parents, Jimmy and Barri Mayse. You don't think they caused this, cut the trees down, do you? They didn't leave the debris out there to your knowledge, did they?

A: Huh-uh.

Q: And that's a no, they didn't?

A: Sorry. Yeah.

-15-

Q: And they didn't cause you to fall to the best of your knowledge, did they?

A: To the best of my knowledge.

Q: And that's a no, to the best of your knowledge?

A: Yeah.

Q: Okay. *And there wasn't anything hidden or concealed about the property or where you fell*?

A: *No*.

Q: And you had been out there on at least three other occasions?

A: Yes.

Q: And the weather wasn't bad?

A: No.

Q: And it was daylight?

A: Yeah.

Q: And you just fell; is that a fair way to put it?

A: Yeah.

(Emphasis added.)

There are no disputed material facts presented in this record; plaintiff does not argue in his brief that there are any, nor does he point to any material fact in dispute. Accepting plaintiff's version of the facts as true, and drawing all reasonable inferences in his favor, we find that there is no proof establishing that the area where plaintiff "misstepped" and fell presented any unreasonable risk of harm. There is simply no evidence of a dangerous or defective condition. The rock that plaintiff tripped on was easily visible, in an area with no obstructions; it was truly "open and obvious." Plaintiff was well familiar with the area, having worked there and traveled the same path on three earlier occasions. Plaintiff admitted

having seen the rock and stepped on it multiple times before his misstep, so he knew the rock was there. " 'Liability in premises liability cases stems from superior knowledge of the condition of the premises.' " *Blair v. W. Town Mall*, 130 S.W.3d at 764 (quoting *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn.1980)); *Christian v. Ayers L.P.*, No. E2013-00401-COA-R3-CV, 2014 WL 1267247 at *5 (Tenn. Ct. App. E.S., filed Mar. 28, 2014) (quoting *Green v. Roberts*, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012)); *Martin v. Melton*, No. M2012-01500-COA-R3-CV, 2013 WL 6206865 at *5 (Tenn. Ct. App. M.S., filed Nov. 26, 2013); *Nee*, 106 S.W.3d at 653. Under these circumstances, plaintiff had at least equal, and probably superior, knowledge of the condition of the premises at issue. Even assuming that defendants had constructive notice of the location of the rock, there is no evidence that they undertook any action to put it there or to create any condition that could be said to be unreasonably dangerous.

Several other legal principles inform our analysis and decision. We have recently noted that "an individual has a duty to take reasonable care for his or her own safety." *Martin*, 2013 WL 6206865 at *4; *see also Green*, 398 S.W.3d at 179; *Smid v. St. Thomas Hosp.*, 883 S.W.2d 632, 634 (Tenn. Ct. App. 1994) ("We doubt that there is any product of nature or of human invention, no matter how benevolent, that a human being cannot turn into a source of injury to himself, if only he is careless enough. We believe that the defendant had no duty to protect the plaintiff from the consequences of his action, when he could have easily protected himself by simply looking where he was about to step."). We have also observed that " 'negligence is not to be presumed by the mere happening of an injury or accident,' " *Friedenstab v. Short*, 174 S.W.3d 217, 219 (Tenn. Ct. App. 2004) (quoting *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971)), and that "[a] landowner is not an insurer of his premises as relates to invitees." *Id.* at 224 (citing *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn.1980)). Finally, Tennessee appellate courts have affirmed summary judgment or a directed verdict on numerous occasions on the ground that there was no duty under facts similar or analogous to those presented here. *See, e.g., Green*, 398 S.W.3d at 179-80, 182, and cases cited therein; *Friedenstab*, 174 S.W.3d at 228; *Wilson v. Gables-Tenn. Properties, LLC*, 168 S.W.3d 154, 155 (Tenn. Ct. App. 2004); *Plunk v. Nat'l Health Investors, Inc.*, 92 S.W.3d 409, 415 (Tenn. Ct. App. 2002) (reversing jury verdict and directing dismissal of premises liability claim); *Nee*, 106 S.W.3d at 654; *Rice*, 979 S.W.2d at 307.

V.

The trial court's grant of summary judgment in favor of defendants is affirmed. Costs on appeal are assessed to the plaintiff, Petros Goumas. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE