GENTRY *v.* TAYLOR *et al.* (two cases).

(*Nashville,* December Term, 1944.)

Opinion filed February 3, 1945.

MANIER & CROUCH, of Nashville, for petitioner Gentry (plaintiff below).

NORMAN & KEEFE, of Nashville, for respondent Taylor (defendant below).

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

These are actions for damages for a personal injury in which plaintiffs recovered judgments in the trial Court against Ida D. Taylor, as Trustee, owner of the premises, and J. R. Blake, lessee. The trial judge sustained a motion for a new trial as to Ida Taylor, the lessor, and directed a verdict in her favor, from which action plaintiffs appealed. The Court of Appeals reversed and this Court granted *certiorari*.

In June, 1942, Robbie Gentry, a colored girl, was seriously injured when the seat of a stool on which she was sitting at a refreshment counter in a restaurant located in Greenwood Park, Nashville, broke. The restaurant was operated by defendant Blake under a five year lease made to him by defendant Taylor, the owner, as trustee, of Greenwood Park, composed of some forty acres in the outskirts of Nashville and which for many years had been conducted as a park for recreation and amusement for colored people. There was no admission charge to the park, it being open to the public. The only amusement facilities afforded were a swimming pool and a dance hall, to both of which a small admission fee was charged. The refreshment stand, or restaurant, where sandwiches, soft drinks and other refreshments of this nature were sold, was located within the grounds and, as before stated, was leased to and under the exclusive control and management of Blake. There were five or six of the seats, or stools, arranged along a counter, and there were tables and chairs elsewhere in the place. The lease, made something more than two years before, described the place as a soft drink and sandwich shop, with one eating counter and chairs (stools), and

five tables and chairs. The lease contained the following clauses:

"It is understood and agreed that the said premises are received by the Lessee in good order and condition and that they are to be kept and returned in the like good order and condition, . . .

"It is stipulated and agreed that the party of the first part assumes no responsibility whatsoever for the negligent acts of the second party nor for any indebtedness contracted by second party by virtue of the occupancy of the above premises as hereinabove provided. It is further agreed and stipulated that second party will make all necessary repairs to the premises hereinabove occupied by second party."

The Court of Appeals finds these facts:

"At the time this contract was signed and the premises turned over to Blake there were five counter stools along the lunch counter. These stools were built or put in by the owner, and they were in good condition. Blake took absolute control of this sandwich shop. The owner had nothing more to do with it. After Blake had operated this shop for two years, one of these counter stools became dangerously defective. The stools were built by using an iron pipe about one inch in diameter as a stand and by placing on the top of this pipe a round wooden seat upon which the customer could sit. This iron pipe had worn a hole in the socket in which it was placed and through the wooden part of the stool. When plaintiff, Robbie Gentry, sat down on this wooden stool, the pipe crashed through the seat, into her body, and very seriously injured her. At the time she sat on the stool it was in a dangerous condition. Neither the owner nor the lessee had made a careful inspection of this stool since it was installed. They stated that they just looked at it. There

was no proof that the stool was in a dangerous condition at the time the premises were leased to the lessee. To the contrary it appears without controversy that the stool was in good condition at that time."

The sole question in the Court of Appeals and before us is whether or not this owner-lessor is liable. It seems clear, on the above facts, and the Court of Appeals concedes, that the owner-lessor is not liable under the general rule announced in our cases dealing with the question of responsibility of landlords for injuries resulting to tenants and their invitees occupying premises under leases. *Hines* v. *Willcox,* 96 Tenn. 148, 33 S. W. 914, 34 L. R. A. 824, 832, 54 Am. St. Rep. 823; *Willcox* v. *Hines,* 100 Tenn. 524, 45 S. W. 781, 66 Am. St. Rep. 761; *Beaman* v. *Grooms,* 138 Tenn. 320, 197 S. W. 1090, L. R. A. 1918B, 305; *Tennessee Enterprises, Inc.,* v. *Schlesinger,* 12 Tenn. App. 649; *Diamond* v. *Drew,* 17 Tenn. App. 488, 68 S. W. (2d) 955; *Haire* v. *American Trust & Banking Co.,* 19 Tenn. App. 656, 94 S. W. (2d) 59.

But the Court of Appeals was of opinion that the lessor in this case shared responsibility and liability for this injury under the exception applicable to amusement parks recognized in numerous cases, among these our case of *Hartman* v. *State Fair Ass'n,* 134 Tenn. 149, 183 S. W. 733, Ann. Cas. 1917D, 931, and *Frear* v. *Manchester Traction, Light & Power Co.,* 83 N. H. 64, 139 A. 86, 61 A. L. R. 1280, and authorities cited therein, from both of which opinions the Court of Appeals quotes at length.

The theory of the Court of Appeals is that the facts of the instant case bring it within the foregoing exception to the general landlord and tenant rule of liability because the leased premises on which the injury occurred were located in an amusement park owned by petitioner, to which the public, including the plaintiff below, were

invitees of petitioner; and that the rule which fixes responsibility on the owner for continuing supervision and inspection of such leased premises applies.

U'pon a careful consideration of the opinion of Mr. Justice Williams in *Hartman* v. *State Fair Ass'n, supra,* we do not find, either in the facts of that case, or expressions in the opinion, support for a holding of liability in the instant case. In the *Hartman Case,* the plaintiff was injured in the collapse because of negligence of an amusement contrivance known as the "Ocean Wave" operated on the grounds of the Fair Association, being one of a number of mechanical amusement devices operated by sub-concessionaries of one Kennedy to whom a part of the fair grounds had been let for the installation and operation of such devices. The description given in the opinion of the "Ocean Wave" shows that it was operated by an engine and in such a way that, moving in a circular course, one side dipping down while the other side was raised, a wavelike effect was produced, the passengers being seated on a circular platform above the ground. Miss Hartman, having purchased her ticket and taken a trip, started to descend from this platform when the steps broke and the platform gave way and she fell, with other passengers, and was seriously injured.

The question was as to the liability of Kennedy, who, it appeared, received thirty per cent of the gross receipts from the operation of this contrivance and who, through his agent, sold the tickets and controlled the financial end of this particular enterprise. The proof showed that this ticket seller had assured Miss Hartman of the safety of the "Ocean Wave." Kennedy's defense was that his sub-concessionary, Davis, was owner in charge of the operation and alone responsible for its condition.

Mr. Justice Williams recognizes an exception which under some conditions fixes liability for negligence in the operation of amusement apparatus upon the owner or lessor of an amusement park, holding that he is "under the obligation of exercising reasonable care to have and keep the premises and equipment reasonably safe for visitors." [134 Tenn. 149, 183 S. W. 734.] He cites, in this connection, *Thompson* v. *Lowell, etc., Street R. Co.,* 170 Mass. 577, 49 N. E. 913, 40 L. R. A. 345, 347, 64 Am. St. Rep. 323, and quotes with approval this extract from the opinion in that case:

"The fact that the exhibition was provided and conducted by an independent contractor would not wholly relieve the defendant from responsibility, provided it was . . . *a kind that it would probably cause injury to a spectator,* unless due precautions were taken to guard against harm." (Italics ours.)

Other cases are cited to the same effect. It is important to note, that generally in this class of cases the owner shares with the exhibitor and operator of the device, usually on a percentage basis, the compensation received and in many of the cases, as was true in *Hartman* v. *State Fair Ass'n, supra,* is so closely associated with the control as to bring the situation within the joint enterprise doctrine.

Moreover, it is even more important to observe that in nearly all of these cases the injury resulted in the course of the use of an amusement device of a more or less inherently dangerous nature, such as flying wheels, merry-go-rounds, ocean waves or the like. In all this class of cases, the lessor, sharing the profits, is inescapably on notice of the necessity of constant supervision and inspection to avoid injury to the patrons. In a more or

230

less degree the non-delegable doctrine affords ground for liability.

█ The general rule applicable in public amusement park cases is thus stated by the Annotator in 123 A. L. R., at pages 872, 873: "It is generally recognized that the lessor of the property for public amusement purposes owes to the public, at least as to latent defects, the duty of exercising ordinary care to provide against defects in the premises which render them unsafe for the use intended. This includes defects in construction, defects caused by the property being in a state of disrepair at the time of the lease, or a condition which, in the nature of things, must ultimately result in the property being dangerous when put to the use intended." Former annotations are cited from 22 A. L. R. 610, Subdivision V, b; 29 A. L. R. 29; 44 A. L. R. 203; 53 A. L. R. 855; 61 A. L. R. 1289; 98 A. L. R. 557, 562. Some of the cases cited in these annotations appear to confine liability to facts where the defect existed at the time of the lease, or at least to where the lessor had notice of the defective condition in the premises. In one case cited (29 A. L. R. 29) liability was adjudged against a lessor when a patron of a dance hall was injured, it appearing that the lessor undertook joint control and supervision and maintained an attendant as his representative. Many illustrations are given in the annotation in 61 A. L. R., beginning on page 1294, and in 98 A. L. R., p. 562, of the various types of amusement attractions and devices operated by concessionaires as to which the proprietor is held liable for failure to exercise supervision and inspection, but none are cited of lunch or refreshment shops or stands, or of like inherently harmless character.

Emphasis has been placed upon the alleged existence of the relationship of invitee. But conceding that the plain-

tiff below was an invitee of petitioner to the park grounds, she was the invitee of the operator of this leased shop only when she entered in and took the seat which gave way. There are various limitations upon the area of invitation to premises generally. See *Chattanooga Warehouse & Cold Storage Co.* v. *Anderson*, 141 Tenn. 288, 210 S. W. 153, and cases there cited, and, also, the English case of *Humphreys* v. *Dreamland*, 100 L. J. K. B. (N. S.) 137-H. L., annotated in 98 A. L. R. 563, which applies the rule of limited area invitation to an amusement park.

A well recognized test of liability under the invitee doctrine is whether or not the owner profits by or is interested in the presence of the visitor on the particular premises. *Bennett* v. *Railway*, 102 U. S. 577, 26 L. Ed. 235; *Knight* v. *Farmers' & Merchants' Gin Co.*, 159 Ark. 423, 252 S. W. 30, 32. In the latter case the Court well said: "It is not always clear, under a given state of facts, as to what inferences may be drawn as to a person being a licensee or an invitee; but one of the sure tests is whether or not the owner of the premises is interested in the presence of the visitor."

If this injury had occurred in either the swimming pool, or the dance hall to which an admission fee was charged by petitioner, an interest in the presence of the visitor would have made her an invitee of petitioner. But no charge for admission to the Park generally was made, and petitioner received no part of any sums expended by this visitor in this shop.

A review of the cases found in the annotations above cited and others seems to limit the liability of the owner or lessor under the exception above noted to those situations in which one or more of the following elements appear: (1) An interest more or less direct and

substantial in the presence of the visitor, as, for instance, a participation in the profits of the operation. (2) An exercise of, or retention of, the right to exercise supervision and control of the operation. (3) A holding out to the public of a representation of ownership interest or control tending to induce patronage. (4) An operation of an instrumentality or device, although by a lessee, so inherently dangerous in construction or operation as to charge the owner-lessor with responsibility for continuing supervision and exercise of ordinary care, in application of the nondelegable duty doctrine.

With these principles in mind, looking to the case of *Frear* v. *Manchester Traction, etc., Co., supra,* relied on by the Court of Appeals, it appears that the defendant railroad Company had taken over a suburban tract of land on its line of railway and developed an amusement park with various attractions to induce public attendance, with the primary purpose of securing patronage and profits for its railway. Among other attractions the defendant arranged with one Williams to install a Ferris Wheel. The Railway Company advertised this place and this attraction, among others, and by this and other means expressly invited persons to visit this park and ride this wheel. The plaintiff was injured on this wheel as the result of negligence in its construction or operation.

Recognizing that a nondelegable duty thus arose of supervision and inspection, even with respect to devices under the control of concessionaires, the Court held the defendant liable primarily on the ground of its express invitation to the public to visit its park and patronize this and other attractions and of its holding itself out as having an ownership relation to the enterprise.

None of these material and determinative features appear here, neither the substantial profit interest of

the owner, nor the operation of an amusement apparatus so apparently dangerous in nature as to carry notice of the need for care in construction and constant supervision and inspection—clearly a nondelegable duty; nor have we here any such invitation to the public to visit the place and patronize advertised amusement devices.

If the plaintiff in this case had been injured in the swimming pool in this park, because of some defect due to negligence, and it appeared that this defendant had expressly invited the public to enter the park on payment of an entrance fee and patronize this pool, under the holding in the *Frear Case* she, as such park owner, might be held liable for failure to exercise reasonable care for the safe condition of the pool, even though operated by a concessionaire. But, we have no such conditions here.

The petitioner had only such interest in patronage of this shop or restaurant that every landlord has in the profits of his tenant. She neither by advertisement nor otherwise extended an invitation to the plaintiff, or others, to visit and patronize it. Moreover, this eating place is not within the class of attractive amusement devices patronage of which is attended with elements of danger to be reasonably anticipated, to which class liability under the rule of exception has been extended and limited by the reported cases.

Indeed, this particular accident is of such an unprecedented character that it may well be doubted that it falls within the range of that reasonably foreseeable damage to which a right of action for negligence is confined. As well expressed by Mr. Salmond (Law of Torts, p. 141), in the language of a leading English authority, "To determine whether or not an act [of commission or omission] is negligent it is relevant to determine whether any reasonable person would foresee that the act would

cause damage; if it would not the act is not negligent.''
Would any reasonable person have foreseen that failure
to inspect an ordinary counter stool or seat *by removing
the top and investigating the extent of wear resulting
from normal use* would cause damage to a casual user?

██ ██ And this brings us to the consideration of the
petition filed by the plaintiff below. Despite the positive
finding of the Court of Appeals, above quoted, that
''There was no proof that this stool was in a dangerous
condition at the time the premises were leased to the
lessee. To the contrary it appears without contradiction
that the stool was in good condition at that time,'' which
was more than two years before the accident, this peti-
tioner insists that there was evidence before the jury
to the contrary, and that the trial Judge therefore was in
error in directing a verdict for the defendant.

We have examined the record cited by petitioner and
considered the earnest argument made, but are con-
strained to concur with the trial Judge and Court of Ap-
peals on this issue. This contention comes down to this:
That there was proof that these stools or seats had been
installed and in use for some time before the lease was
made in 1940, and that the inspection or examination
made at the time of the lease was not shown to have in-
cluded a removal of the top or seat built on to the stand
which supported this stool, and that the question was
thus presented to the jury of whether or not this omission
was such negligence as would charge the landlord with
liability for the injury occurring two years later. As
before stated, we concur with the holding of the trial
Judge and Court of Appeals that this did not constitute
material evidence that the stool was in a defective con-
dition at the time of the making of the lease. The burden
placed by law upon the landlord, lessor, or the inviter,

exacts no more than the exercise of reasonable care to ascertain the condition of the premises and its appurtenances. No unusual or exceptional degree or character of inspection was required.

Being unable to agree with the Court of Appeals that the petitioner is liable as an inviter for failure to exercise a continuing supervision and inspection throughout the term of the lease of this shop, under the rule of exception applied in amusement park attraction cases cited, the decree of the Court of Appeals is reversed and the case dismissed.