# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 9, 2003 Session

## DANA FRIEDENSTAB, ET AL. v. MARTHA SHORT

**Appeal from the Circuit Court for Williamson County**
**No. II-01386      Donald P. Harris, Judge**

_____

**No. M2003-00603-COA-R3-CV - Filed May 27, 2004**

_____

The plaintiffs bring this appeal from the trial court's summary judgment in favor of the defendant. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA  J. COTTRELL, joined. FRANK G. CLEMENT, JR., filed a separate dissenting opinion.

Pamela M. Spicer, Nashville, Tennessee, for the appellants, Dana Friedenstab and Michael Friedenstab.

Alan M. Sowell, M. Kristin Selph, Nashville, Tennessee, for the appellee, Martha Short.

## OPINION

Dana Friedenstab and her husband sued her employer, Martha Short, for injuries sustained when Mrs. Friedenstab slipped and fell at the Short home, where Mrs. Friedenstab performed housekeeping duties for Martha Short. Mrs. Friedenstab's duties often took her up and down a set of stairs leading from the Short kitchen to the garage. The undisputed facts in the record show that the stairs were well lit, when on July 19, 2000, while descending the steps, Plaintiff slipped and fell. A complaint was filed June 13, 2001, and alleged negligence and a failure to warn of a dangerous condition on the property, _i.e._, newspapers placed "on the stairs." Discovery commenced, and by the time Defendant filed her Motion for Summary Judgment on December 13, 2002, the following facts were established and undisputed:

1.      Plaintiff fell when she slipped on newspapers on the floor of the garage at the foot of the stairway.

2. Although Defendant normally put accumulated newspapers near the steps in the garage pending later recycling of them, Plaintiff had never seen the papers near the steps before. It is unknown how many newspapers were near the steps. Although Plaintiff had testified in deposition that she did not know how she missed seeing the papers until she stepped on them, in response to Defendant's motion, Mrs. Friedenstab swore by affidavit that her view of the papers was obstructed by the last of the three steps. Defendant moved for summary judgment, arguing lack of duty and comparative fault.

On February 18, 2003, the trial court granted summary judgment to Defendant on the following grounds:

1. That the newspapers were open and obvious;
2. That Plaintiff had an obligation to watch her step;
3. That nothing distracted Plaintiff's view of the newspapers; and
4. That a reasonable jury would have to find that Plaintiff was more than 50% at fault for her injuries.

It is from this summary judgment grant, that Plaintiffs appeal arguing the existence of material factual issues prohibiting the grant of summary judgment. *See* Tenn. R.. Civ. P. 56; *see also Byrd v. Hall*, 847 S.W.2d 208, 214 - 16 (Tenn. 1993).

The supreme court provides guidance concerning the grant of summary judgment:

Summary Judgment is to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.R.C.P. 56.03. "The court's role in ruling on the motion is similar to its role in ruling on a motion for a directed verdict, and it must view the ... evidence before it in the light most favorable to the opponent of the motion." *Stone v. Hinds*, 541 S.W.2d 598 (Tenn. App. 1976).

*Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 858 (Tenn. 1985).

Both parties agree that the question of the existence of a duty between Defendant and Plaintiff is a question of law. *See Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998). The existence of that duty is the initial requirement of proof to establish a negligence claim. As the court in *Coln* stated:

The determination of whether a duty is owed requires a balancing of the foreseeability and gravity of the potential harm against the burden imposed in preventing that harm. *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 901 (Tenn. 1996). Assuming a duty of care is owed, be it a duty to refrain from creating a danger or a duty to warn against an existing danger, it must then be

-2-

determined whether a defendant has conformed to the applicable standard of care, which is generally reasonable care under the circumstances. "Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending to the particular situation and is to be commensurate with the risk of injury." *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992).

*Coln v. City of Savannah*, 966 S.W.2d at 39.

The court in *Doe* provided this analysis of foreseeability and risk:

"[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury." *Tedder*, 728 S.W.2d at 348. <u>Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent</u>.

> Negligence already has been defined as conduct which falls below a standard established by the law for the protection of others against unreasonable risk of harm. The idea of risk in this context necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may possibly follow. Risk, for this purpose, may then be defined as a danger which is apparent, or should be apparent, to one in the position of the actor. The actor's conduct must be judged in the light of the possibilities apparent to him at the time, and not by looking backward "with the wisdom born of the event." The standard is one of conduct, rather than consequences. It is not enough that everyone can see now that the risk was great, if it was not apparent when the conduct occurred. 5 Prosser and Keeton, *The Law of Torts* § 31, p. 170 (1984) (footnotes omitted).

*Doe v. Linder Constr. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992) (emphasis added).

Keeping in mind that there is no liability for the results of an accident that could not have been foreseen by a reasonably prudent person, and that "negligence is not to be presumed by the mere happening of an injury or accident," *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn.Ct.App. 1971), and that the burden rests upon Plaintiff to establish a duty owed by Defendant to him, a breach of that duty and injury resulting from the breach, *Smith v. Roane-Anderson Co.*, 207 S.W.2d 353 (Tenn.Ct.App. 1947); *Nelson v. Richardson*, 626 S.W.2d 702 (Tenn.Ct.App. 1981), we now look to the record in this case.

Believing that she was filing suit against her physician for medical malpractice, Dana Friedenstab went to her attorney's office and found that she was, in fact, suing Martha Short.

In her complaint she alleged:

4.      The incident occurred at approximately noontime when Plaintiff, Dana Friedenstab, was in Defendant's home providing housekeeping services and attempted to negotiate a flight of three steps from the alcove off the Defendant's kitchen into Defendant's garage to obtain an ironing board.  Prior to June 19, 2000, Plaintiff, Dana Friedenstab was familiar with Defendant's home and had utilized the stairs from Defendant's garage into the alcove off Defendant's kitchen on numerous occasions.  Unknown to Plaintiff Dana Friedenstab, however, Defendant had placed a stack of newspapers on the bottom step leading into her garage and Plaintiff slipped on this stack of newspapers and fell into the floor of Defendant's garage sustaining severe and debilitation injuries.

5.      Defendant, Martha Short, was guilty of one or more of the following acts of negligence which constitute a direct and proximate cause of all injuries and damages alleged herein:

a.      Said Defendant placed newspapers on the steps leading from the alcove off her kitchen into her garage when Defendant knew, or in the exercise of reasonable care should have known, that said newspapers created an obstruction on the steps and a dangerous condition for people attempting to traverse those steps;

b.      Said Defendant failed to warn Plaintiff Dana Friedenstab that she had placed newspapers on the steps leading from the alcove off her kitchen into her garage when said Defendant knew, or in the exercise of reasonable care should have known, that said newspapers created an obstruction on the steps and a dangerous condition for people using the steps, and that Plaintiff Dana Friedenstab would be using those steps in performing the housekeeping services that Defendant had requested Plaintiff to perform.

6.      As a direct and proximate result of Defendant's foregoing acts of negligence, Plaintiffs have incurred doctor, hospital, and medical expenses, and will continue to incur such expenses in the future.

Sixteen months after filing her complaint, Plaintiff testified, by discovery deposition, in relevant part:

Q.      Is it fair to say that during the two years that you had been working with her at her house that you were familiar with her house?
A.      Very.  And it's a big house.
Q.      Now, this incident occurred in the garage; is that correct?
A.      Yes, it did.
Q       How many times had you been in the garage before during those two years?
A.      Many times.

. . . .

-4-

Q. And you went into the garage, was there light in the garage?

A. There was light like it always was but mainly coming from the skylight and from the storage room that was open.

Q. Did that provide you with adequate light?

A. Sure, it was. I never really - - it was never dark.

Q. All right. So you didn't need to turn on a light?

A. No, it was - - it was plenty lit up.

Q. All right. Tell me what happened.

A. Boy, it's all a blur, but I just didn't see any papers until my foot hit them and flew out from under me. I didn't see - - I was just - - and I was looking where I was going because I always did and I didn't have any reason to think that it would be any different that day because she had never had papers there before, ever.

Q. Now, when you say papers, are you referring to newspapers?

A. They were newspapers.

Q. And they were at the bottom of the steps on the garage floor?

A. They were at the bottom the steps on the garage floor?

Q. So they were not on the steps?

A. No, not on the step. It was at the bottom. I know that I had seen that somewhere where they said on the step. It's not so, it was on the bottom.

Q. How many newspapers were at the bottom - -

A. I don't know.

Q. Let me finish my question. How many newspapers were at the bottom of the stairs?

A. I have no idea. I just know there was newspapers that my feet fell on.

Q. Now, what prevented you from seeing these newspapers?

A. I don't know. They just weren't that visible until I hit them. It was just three steps and I'm going down - - down the steps and by the time my foot hit the bottom, it slid out from under me.

Q. I think of newspapers as being fairly large and white. Is that what they were?

A. Yes, they were. I'm sorry, I didn't see them until my feet was hitting them. I just didn't.

Q. I understand you didn't see them, but if you had been looking for them, you would have seen them.

A. Well, there's no need to look for them. There had never been any papers at the bottom of the stairs before, ever.

Q. So you felt that there wasn't any reason to look at the bottom of the stairs?

A. Well, I was looking where I was going, but no, I wasn't looking to see if there was papers laying down there.

Q. Well, what did you see?

A. I saw my feet fly out from under me.

Q. What did you see before you saw your feet fly out from under you?

A.      I saw the steps.

Q.      And then after the steps there's the garage floor; is that right?

A.      That's it.

Q.      And that's where the newspapers were?

A.      Under the last step going to the garage on the floor, under the last step.

Q.      Are you saying you couldn't see the newspapers because - -

A.      Well, they weren't there to see.

Q.      Wait, wait, wait. Are you saying that you couldn't see the newspapers because the step blocked your view of them?

A.      No. I'm saying that I didn't see them at all until my foot hit them.

Q.      I understand what you just told me. What I'm trying to find out is why you didn't see them.

A.      I don't know, but I did not see them.

Q.      Nothing blocked your view?

A.      Nothing. I just didn't see them. They were not that visible until my foot was hitting them.

Q.      You say they weren't that visible, but there was light to see them by?

A.      There was - - there was light in there. I would have turned on the light if there wasn't light.

Q.      So you just don't know why you didn't see them?

A.      I was looking where I was going. I was seeing the steps, but when I saw the papers it was too late. I was hitting them and falling.

Q.      Were you carrying anything in your arms?

A.      No, not a thing.

Q.      Were you rushing down the stairs?

A.      Just like normal, like I had always went down.

While Defendant testified that for years she routinely stacked newspapers on one side or the other of the steps leading from the kitchen to the garage until enough papers were accumulated to justify a trip to the recycling center, there is no evidence that she placed any newspapers on the landing below the last step leading down from the kitchen. When Defendant filed a Motion for Summary Judgment Plaintiff responded with an affidavit, asserting in pertinent part:

5.      As I was descended the stairs I was looking where I was going and did not rush.

6.      I was being careful as I descended the stairs and I was not carrying anything.

7.      There was adequate light in the garage as provided by the window and open storage room.

8.      I did not see the newspapers as I descended the stairs until my foot hit them.

9.      At the time my foot hit the newspapers, the newspapers were located at the bottom of the stairs.

10.     My view of the newspapers was obstructed by the last step, as when I slipped on the newspapers, the newspapers were at the bottom of the stairs and I could not see them.

There is no proof offered in the record by which any trier of fact or trier of law can determine whether one sheet of newspaper was on the garage floor, immediately below the last step, or a multi-inch stack of newspapers. There is no evidence in the record as to how such newspaper or newspapers got into this location. There is no evidence of any substance, either on the newspaper, on the steps, or beneath the newspaper that would make the landing below the last step hazardous or defective. One would have to find the newspaper itself constituted the hazard - - a rather nebulous assumption - - though possible.

Before addressing the "traditional open and obvious rule" as that rule was modified by *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998), it is necessary to address the direct contradiction between the deposition testimony of Plaintiff and her statement under oath in her affidavit filed in response to the Motion for Summary Judgment. The critical question is the extent to which the bottom step obstructed her view of the newspapers resting on the garage floor immediately beyond and below the bottom step. In deposition, Plaintiff testified:

Q.      What did you see before you saw your feet fly out from under you?
A.      I saw the steps.
Q.      And then after the steps there's the garage floor; is that right?
A.      That's it.
Q.      And that's where the newspapers were?
A.      Under the last step going to the garage on the floor, under the last step.
Q.      Are you saying you couldn't see the newspapers because - -
A.      Well, they weren't there to see.
Q.      Wait, wait, wait. Are you saying that you couldn't see the newspapers because the step blocked your view of them?
A.      No. I'm saying that I didn't see them at all until my foot him them.
Q.      I understand what you just told me. What I'm trying to find out is why you didn't see them.
A.      I don't know, but I did not see them.
Q.      Nothing blocked your view?
A.      Nothing. I just didn't see them. They were not that visible until my foot was hitting them.
Q.      You say they weren't that visible, but there was light to see them by?
A.      There was - - there was light in there. I would have turned on the light if there wasn't light.
Q.      So you just don't know why you didn't see them?
A.      I was looking where I was going. I was seeing the steps, but when I saw the papers it was too late. I was hitting them and falling.
Q.      Were you carrying anything in your arms?

A.    No, not a thing.

(emphasis added)

In her affidavit in response to Defendant's Motion for Summary Judgment, she said "my view of the newspapers was obstructed by the last step, as when I slipped on the newspapers, the newspapers were at the bottom of the stairs and I could not see them." (emphasis added)

No explanation is offered as to this vital contradiction. When Plaintiff attempts to establish that a disputed question of fact exists as to her failure to see what was otherwise open and obvious to her by claiming in her affidavit that her view of the newspaper was obstructed by the bottom step, she fails as a matter of law.

"Two sworn inconsistent statements by a party are of no probative value in establishing a disputed issue of material fact." *Price v. Becker*, 812 S.W.2d 597 (Tenn.Ct.App. 1991). So it is that the *Coln* analysis must be made accepting as fact that nothing obstructed the view of Plaintiff of what was immediately in front of and below her and nothing distracted her attention.

In *Coln*, Tennessee abandoned the traditional "open and obvious" rule in favor of the Restatement approach. Under this approach: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (2nd) of Torts, § 343A(1).

While as the court recognized in *Coln*, some jurisdictions have entirely abrogated the open and obvious rule, the Restatement rule, as adopted in *Coln*, is still dependent upon the duty analysis.

This Restatement duty analysis includes a comment that:

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitees' attention may be distracted, so that he will not discover what is obvious, or will forget what he had discovered, or will fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. Restatement (2nd) of Torts, § 343A(comment f).

*Coln*, 966 S.W.2d 34 at 41 (Tenn. 1998).

The result of *Coln* is: "The analysis, therefore, as in any negligence case, is first upon duty in accordance with the foreseeability and gravity of harm, and the feasability and availability of alternatives; if a duty is imposed, then surrounding circumstances are analyzed under the principles of comparative fault." *Coln*, 966 S.W.2d at 42.

-8-

First, the court must answer the question of law as to whether or not a duty exists under the facts of this case. If such a duty exists, then the court must determine whether or not the record establishes, as a matter of law, that Plaintiff is 50% or more at fault for her own injuries. If so, judgment is rendered for Defendant. If not, summary judgment must be reversed and the case remanded for trial on the merits. In analyzing the existence of a duty, the first and foremost consideration is "foreseeability and gravity of harm." A landowner is not an insurer of his premises as relates to invitees. *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). The condition causing the injury in this case was newspaper lying on the landing at the bottom of the three-step stairway. There is no allegation or proof of any defect or obstruction existing on the stairway. There was no foreign substance of any type on the stairway. There is no proof of any substance or condition of the surface or subsurface of the basement floor beneath the last step of the stairway which could have combined with the newspaper lying on the floor surface to create a slippery condition. Plaintiff did not catch her heel in the newspapers or stumble over the newspapers, but asserts only that she "slipped and fell" as she stepped on the newspaper.

Certain long standing rules of law did not come to an end with the advent of *Coln*. The adoption of the Restatement rule in *Coln* reaffirms, rather than abrogates, the requirement of an analysis of foreseeability by the court in determining the question of law of whether or not a duty exists. In this "foreseeability analysis" the rules laid down in *Illinois Central Ry. Co. v. Nichols*, 118 S.W.2d 213 (Tenn. 1938) are still viable.

> In order to impute to the owner knowledge of a dangerous thing, or place, the danger therefrom must be such as is recognized by common experience, or might reasonably be expected or anticipated by a person of ordinary prudence and foresight. Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made (here the ventilated slat floor) is insufficient as against an event such as might happen once in a life time (here that this customer for tomatoes would enter this freight car wearing a soft and worn rubber heel, and twist it between the slats, and fall through the car door) does not make out a case of actionable negligence. These rules, thus stated in 20 R.C.L. p. 16, have been announced in numerous opinions cited in the notes. As said by Mr. Justice Holmes, when on the Massachusetts Court, "If men were held answerable for everything they did which was dangerous in fact, they would be held for all their acts from which harm in fact ensued. The use of the thing must be dangerous according to common experience, at least to the extent that there is a manifest and appreciable chance of harm from what is done, in view either of the actor's knowledge or of his conscious ignorance." *Com. v. Pierce*, 138 Mass. 165, 52 Am.Rep. 264. In harmony are the holdings in this State that to render one liable for negligence, it must be shown that the damages was the ordinary or probable consequence of the act, or omission. *Youngstown Bridge Co. v. Barnes*, 98 Tenn. 401, 39 S.W. 714; *East Tennessee Railroad Co. v. De Armond*, 86 Tenn. 73, 5 S.W., 600, 6 Am.St.Rep. 816; *Weeks v. McNulty*, 101 Tenn. 495. 496, 48 S.W. 809, 43 L.R.A. 185, 70 Am.St.Rep. 693.

*Illinois Central Ry. Co. v. Nichols*, 118 S.W.2d at 217 (Tenn.Ct.App. 1938).

As stated by the supreme court in *Gentry v. Taylor*, 185 S.W.2d 521 (Tenn. 1945), "as well expressed by Mr. Salmond (Law of Torts, p. 141), in the language of a leading English authority, 'to determine whether or not an act [of commission or omission] is negligent it is relevant to determine whether any reasonable person could foresee that the act would cause damage; if it would not the act is not negligent.' " 185 S.W.2d 521 at 525 (Tenn. 1945).

This Court has held, "whether there is a duty owed by one person to another is a question of law to be decided by the court." However, once a duty is established, the scope of duty or the standard of care is a question of fact to be decided by the trier of fact. *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn.Ct.App. 1990). The line to be drawn between "duty as law" and "scope of duty as fact" is difficult to see and in some cases all but imperceptible. While the approach of Justice Holder concurring in *Coln* would, for all practical purposes, eliminate the line of demarcation, the adoption by the majority in *Coln* of the Restatement approach reaffirms the demarcation and reaffirms "foreseeability" as the primary test for the existence of a duty.

One has but to compare the facts of the two cases and then apply the foreseeability analysis of *Rice v. Sabir*, 979 S.W.2d 305 (Tenn. 1998) to conclude that summary judgment on the "duty" question is mandated in this case. In *Rice*, the landowner, Sabir, had no actual knowledge that severe mildew had accumulated on the roof, or that it was extremely slippery and any more dangerous than normal. Sabir only had knowledge that mildew existed inside the house. In the case at bar, Mrs. Short had no actual knowledge of newspapers on the floor landing of the basement immediately beyond the last step. She had only knowledge that she had, through the years, placed newspapers on either side of the stairway in contemplation of recycling them. In reconciling *Rice* with *Coln*, the supreme court said:

> As we said in *Coln*, 966 S.W.2d at 34, merely labeling the injury-causing condition 'open and obvious' does not end the inquiry as to duty. Instead, the court must weigh the foreseeable risk and gravity of harm against the burden placed on the defendant to engage in alternative conduct which would have prevented the harm. Here, we conclude that the harm was not reasonably foreseeable and that no alternative conduct was required of the defendant.

*Rice v. Sabir*, 979 S.W.2d 305, 310 (Tenn. 1998).

Post-*Coln* and *Rice*, Judge Farmer writing for this Court held:

> In a premises liability action, liability stems from the superior knowledge held by the owner or occupier regarding the condition of the premises. *Ogle v. Winn-Dixie, Greenville, Inc.*, 919 S.W.2d 45, 46 (Tenn.Ct.App. 1995). The owner or occupier has a duty to exercise reasonable care to prevent injury to persons lawfully on the premises. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). The duty of an

-10-

owner or occupier to exercise reasonable care includes the responsibility to remove or warn against the latent or hidden dangerous conditions on the premises that the owner or occupier is aware of or should have been aware of through the exercise of reasonable diligence. *Id.* "The duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered and with reasonable care.'" *Id.* (quoting W. Page Keeton, *Prosser & Keeton on Torts*, § 61 at 426 (5th ed. 1984)). Further, "mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id.* (quoting Keeton, *supra* at 426-427).

*Nee v. Big Creek Partners*, 106 S.W.3d 650, 653 (Tenn.Ct.App. 2002).

With no other proof in the record of any danger or defective condition, other than a newspaper on the floor, this case fails the foreseeability test of *Illinois Central R.R. Co. v. Nichols* and its progeny, and summary judgment was properly granted on the basis that Plaintiff has established no duty owing to Plaintiff from Defendant.

While, as in *Rice*, the "open and obvious" rule is a part of the foreseeability analysis, the same rule, as modified by the adoption in *Coln* of the rule in Restatement (2nd) of Torts § 343A, is likewise included in comparing fault. The proof in this case by Defendant is uncontradicted that she never placed newspapers on the basement floor in front of the first step, but always stacked them either to the left or right of the stairs. Her testimony is buttressed by the testimony of Plaintiff that she had never before seen newspapers on the floor in front of the steps - - and indeed, had never seen newspapers in the basement at all. It is simply assumed that somehow it was Defendant who had placed the newspapers on the basement floor in front of the steps.

Since time immemorial, the liability of the owner of premises has been predicated upon his assumed superior knowledge.

Liability is grounded on the *superior knowledge* of the owner of the danger to the invitee. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted. In the language of Mr. Justice Harlan, the owner is liable to his invitees for injuries "occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation." *Bennett v. Louisville & N. R. Co.*, 102 U.S. 577, 580, 26 L.Ed. 235. We quote this pertinent language from 20 R.C.L. p. 57, citing cases: "It has been said that the phrase 'implied invitation' in its real meaning and significance, as derived from its application to the adjudged cases, imports knowledge by the defendant of the probable use by the plaintiff of the defendant's

property so situated and conditioned as to be open to, and likely to be subjected to, such use.  And, hence, there is no liability from dangers *that are obvious, or as well known to the person injured as to the owner.*"

*Illinois Cent. R. Co. v. Nichols*, 118 S.W.2d 213, 217-18 (Tenn.Ct.App. 1938).

Section 343A of the Restatement can be divided into two parts with the first part asserting, "a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them."  In this case, if the presence of the newspaper on the floor before the first step can be referred to as a "danger" there is no proof in the record that Defendant landlord ever knew the condition existed.  The condition, however - - whether it be a danger or not - - was open and obvious to Plaintiff.  No underlying condition was hidden from her view.  Under cases in Tennessee predating *Coln*, an invitee could not recover for injuries sustained from conditions of the premises that were obvious and as well known to the plaintiff as to the defendant.  *Kendall Oil Co. v. Payne*, 293 S.W.2d p. 40 (Tenn. 1955); *Park v. Sinclair Refining Co.*, 142 S.W.2d 321 (Tenn.Ct.App. 1940).  This first part of the rule stated in section 343A of the Restatement is simply a reiteration  of the pre-*Coln* "open and obvious" rule.

It is the second part of the Restatement rule that changes the pre-*Coln* "open and obvious" rule.  This part states, "unless the possessor should anticipate the harm despite such knowledge or obviousness."  For it to be said, under the facts of this case, that Defendant should anticipate that stepping on a newspaper, on the flat surface of the floor just below the last step, could result in harm, stretches the imagination.  In *Coln*, after reciting the facts and the Restatement rule, the court reversed summary judgment for Defendant holding:

> We find that the City owed a duty of care under the facts of this case.  The deviation between the surface of the brick pavers and concrete sidewalk created a foreseeable probability of harm.  Although the deviation was open and noticeable to a degree, it is significant that the deviation was in an area that had to be navigated in order to gain access to the City Hall building.  It is also significant that the City had actual knowledge of the deviation when the pavers were installed and was aware of the availability of corrective action. Despite such knowledge and the foreseeable risk of harm to persons who entered the City Hall building, the City took no steps to remove or warn against the danger.  In our view, the risk of harm was unreasonable despite its open and obvious nature and the foreseeability and gravity of harm, therefore, outweighed the burden imposed in protecting against that harm.  *See McCall v. Wilder*, 913 S.W.2d at 153.

*Coln*, 966 S.W.2d at 44 (Tenn. 1998).

Under the facts of this case how can the landlord be charged with superior knowledge of the existence of the condition that caused Plaintiff to slip and fall?  Defendant had never placed newspapers on the floor landing beyond the first step.  Plaintiff had never seen newspapers on the

floor landing beyond the first step before. There is no evidence of the existence of any substance on the steps or on or beneath the newspapers which could have caused them to be slippery. If the newspaper itself could be slippery, there is no proof that Defendant could somehow have superior knowledge over and above the knowledge of Plaintiff.

In this case, the proof must show negligence on the part of somebody as the mere happening of an accident provides no basis for liability. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn.Ct.App. 1971). If Defendant is to be charged with negligence under the facts of this case, such finding must be based on some inherently slippery condition within the newspaper itself. None of the *Coln* factors for applying the second part of the Restatement rule appear in this case. In *Coln*, the deviation between the surface of the brick pavers and the concrete sidewalk created a foreseeable probability of harm. Such factor does not appear in this case. In *Coln*, the city had actual knowledge of the deviation and was aware of the availability of corrective action. In this case, there is no proof that Defendant was aware of newspapers located on the landing below the steps.

Given the facts in this case that Defendant had no actual knowledge of the presence of the newspapers on the landing beneath the steps, and no evidence is presented that could establish constructive notice, coupled with the fact that the newspapers were in the plain and unobstructed view of Plaintiff, if negligence exists, it is clear that Plaintiff is guilty of at least 50% of fault for her own injuries. *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994).

No duty having been established summary judgment was properly granted for Defendant. Even if a duty had been established it is clear under the facts that Plaintiff was responsible for no less than 50% of her own injuries. In either case, summary judgment was properly granted and the judgment of the trial court is affirmed. Costs of the cause are assessed to Plaintiff.

_____

WILLIAM B. CAIN, JUDGE

-13-