# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 21, 2014 Session

## ROBERT BOYKIN v. THE GEORGE P. MOREHEAD LIVING TRUST

**Appeal from the Circuit Court for Davidson County**
No. 11C394        Thomas W. Brothers, Judge

_____

**No. M2014-00575-COA-R3-CV – Filed May 29, 2015**

_____

Appellant tripped and fell on a concrete landing in a parking lot. At the time, Appellant was attempting to return to his vehicle, which was located in the parking lot of a separate retail establishment. Appellant suffered injuries from his fall and sued the parking lot owner for negligence. The parking lot owner moved for summary judgment. The trial court granted summary judgment in the owner's favor, finding that the owner did not owe a duty to Appellant. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ. joined.

Benjamin E. Winters, Nashville, Tennessee, for the appellant, Robert Boykin.

Lynn Vo Lawyer, Nashville, Tennessee, for the appellee, The George P. Morehead Living Trust.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2010, Robert Boykin was running errands in the Green Hills neighborhood of Nashville, Tennessee. After leaving Radio Shack, he walked to a nearby seamstress shop. The seamstress shop is located on property owned by The George P. Morehead Living Trust (the "Trust"). In order to walk from Radio Shack to the seamstress shop, Mr. Boykin had to cross a concrete parking bumper, a strip of dirt and grass, and step up approximately nine inches to reach a concrete parking landing at an adjoining retail center. The concrete parking landing has two parking places. On the

other side of the concrete parking landing, the seamstress shop's parking lot is level with the landing, except for a three-foot section[1] on the right end of the landing. In the three-foot section, the parking lot is four inches lower than the landing. On the right side of the concrete landing, there is a metal railing with metal bars from top to bottom. The railing separates the concrete landing from a ditch.

On his way to the seamstress shop from Radio Shack, Mr. Boykin navigated the concrete parking landing without incident. However, on his way back to the Radio Shack parking lot, Mr. Boykin tripped on the three-foot section that is four inches lower than the concrete parking landing. In the resulting fall, Mr. Boykin suffered injuries to his face and left hand. Mr. Boykin stated that he did not notice the difference in height prior to the fall because he was looking straight ahead, rather than down at where he was walking. He also stated that, after he fell, he looked back and noticed the height difference between the landing and the seamstress shop parking lot. Mr. Boykin admitted that, if he had looked down prior to crossing the concrete landing, he would have noticed the height difference. Prior to the incident in this case, no other accidents, incidents, or complaints regarding the concrete landing had been reported to the Trust.

On January 28, 2011, Mr. Boykin filed a complaint against the Trust. Mr. Boykin alleged that the Trust was negligent in maintaining and failing to correct the dangerous condition of the concrete landing, i.e., the four-inch height difference on the right side of the concrete landing. The Trust denied that the condition warranted correction. It also alleged that Mr. Boykin was the sole and proximate cause, or alternatively, a contributing cause of the accident for not watching where he was walking.

The Trust moved for summary judgment on November 13, 2013, claiming that it did not owe a duty to Mr. Boykin. After a hearing, the trial court granted summary judgment in favor of the Trust on February 24, 2014. The trial court found that Mr. Boykin failed to establish that a dangerous or defective condition existed and, therefore, the Trust had no duty to warn Mr. Boykin or to correct the condition. The court also found that the height difference between the landing and seamstress shop parking lot was open and obvious, and that reasonable minds could not disagree that Mr. Boykin was at least fifty percent at fault for not watching where he was walking. Mr. Boykin timely appealed.

## II. ANALYSIS

On appeal, Mr. Boykin claims that the court erred by finding that: (1) he failed to establish that a dangerous and defective condition existed, and thus, that the Trust owed

---

[1] The section is actually thirty-three inches long, but for simplicity, we refer to the section as being three feet long.

him no duty; and (2) he was at least fifty percent at fault for failing to avoid an open and obvious condition.

## A. STANDARD OF REVIEW

The requirements for a grant of summary judgment are well known. Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The party moving for summary judgment bears the burden of demonstrating both that no genuine dispute of material facts exists and that it is entitled to a judgment as a matter of law. *Martin*, 271 S.W.3d at 83. Where the moving party fails to meet its burden of production, "the burden does not shift to the nonmovant, and the court must dismiss the motion for summary judgment." *Shipley v. Williams*, 350 S.W.3d 527, 535 (Tenn. 2011).

When considering a motion for summary judgment, the trial court must view the evidence in the light most favorable to the opposing party and draw all reasonable inferences in the opposing party's favor. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The court is not to "weigh" the evidence when evaluating a motion for summary judgment or substitute its judgment for that of the trier of fact. *Martin*, 271 S.W.3d at 87; *Byrd*, 847 S.W.2d at 211.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin*, 271 S.W.3d at 84; *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

## B. NEGLIGENCE CLAIM

In order to prevail on a negligence claim, a claimant must prove the following elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). Normally, "negligence cases are not amenable to disposition on summary judgment unless" the inferences and facts taken together "are so certain and

uncontroverted that reasonable minds would agree." *Burgess v. Tie Co. 1, LLC*, 44 S.W.3d 922, 923 (Tenn. Ct. App. 2000). With this instruction in mind, we first consider whether the Trust, as the owner of the seamstress shop parking lot, owed a duty of care to Mr. Boykin. That issue is a question of law to be determined by the court, and we review it de novo. *See West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005).

In a premises liability case, an owner's liability stems from his superior knowledge concerning the condition of the premises. *Nee v. Big Creek Partners*, 106 S.W.3d 650, 653 (Tenn. Ct. App. 2002). The owner of the premises "has a duty to exercise reasonable care to prevent injury to persons lawfully on the premises." *Id.* (citing *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998)). This duty includes a responsibility to remove or warn against hidden dangerous or defective conditions of which the owner is aware or should have been aware through the exercise of reasonable diligence. *Id.* However, owners do not have a duty to remove or warn against conditions that pose an unforeseeable risk or those conditions which the owner "'neither knew about nor could have discovered with reasonable care.'" *Id.* (quoting *Rice*, 979 S.W.3d at 308). Owners also owe no duty to guests with regard to open and obvious conditions, unless the owner "should anticipate the harm despite [the guests'] knowledge or [the condition's] obviousness." *Friedenstab v. Short*, 174 S.W.3d 217, 223 (Tenn. Ct. App. 2004); *see also Coln*, 966 S.W.2d at 40.

Because Mr. Boykin was lawfully on the Trust's premises, we conclude the Trust owed a duty to exercise reasonable care to prevent injury to him. *See Nee*, 106 S.W.3d at 653. However, the scope of the Trust's duty of care did not extend to the height variation between the level of the concrete parking landing and the parking lot for two reasons: (1) it did not pose an unreasonable risk; and (2) it was an open and obvious condition.

A risk is unreasonable, and thus triggers the defendant's duty of reasonable care, when "the foreseeable probability and gravity of harm posed by the defendant's conduct outweigh the burden upon [the] defendant to engage in alternative conduct that would have prevented harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citing Restatement (Second) of Torts § 201 (1964)). If a condition is not dangerous or defective, then it does not pose an unreasonable risk to guests. *See Piana v. Old Town of Jackson*, 316 S.W.3d 622, 630 (Tenn. Ct. App. 2009) (stating that a plaintiff must provide evidence that a dangerous or defective condition exists in order to prove an unreasonable risk of harm to guests); *see also Nee*, 106 S.W.3d at 653.

In *Nee*, the plaintiff contended that the stairs on the side of a golf teeing area were a dangerous or defective condition. *Id.* at 652, 654. The plaintiff presented photos and his own testimony that the stairs were dangerous. *Id.* at 654. The court concluded that, "[a] finding that the steps were defective or dangerous based on the photographs would require the jury to engage in speculation, conjecture, and guesswork." *Id.* The court also found the plaintiff's testimony insufficient because nothing about his description of the accident permitted a "reasonable inference that the stairs . . . were defective or

dangerous." *Id.*

Like the claimant in *Nee,* Mr. Boykin did not present sufficient evidence to demonstrate that the height deferential between the concrete parking landing and the parking lot was a dangerous or defective condition. *See id.* Mr. Boykin presented photos, his own testimony, and a contractor's statement that the parking lot surface was not flush with the concrete landing. The photos show only the parking lot and the landing as they existed at the time of Mr. Boykin's injury. For a jury to conclude that the height differential was dangerous or defective would require "speculation, conjecture, and guesswork." *Id.* Similarly, Mr. Boykin's testimony did not permit a reasonable inference that the height differential was defective or dangerous. *See id.* He admitted that, if he had looked down where he was walking, he would have seen the height difference and avoided the fall. The contractor's statement that the asphalt was not even with the concrete slab also does not establish that a dangerous or defective condition existed.

Mr. Boykin counters that he presented the concrete contractor's opinion that the elevation difference could have been easily corrected. The contractor stated:

> It is further my opinion that this deficit in the height of the asphalt layer where it joins the concrete could have been easily corrected because there is plenty of fall on the other two sides of this structure.

However, if a condition is not dangerous or defective, the burden on the Trust to correct the condition is irrelevant.

A condition also does not present an unreasonable risk if the risk is unforeseeable. *Id.* at 653. Mr. Boykin argues the risk of harm was foreseeable because the condition existed prior to the incident and the Trust created the condition. When deciding whether a duty is owed in a particular case, "the foreseeability prong is 'paramount because foreseeability is the test of negligence.'" *Piana*, 316 S.W.3d at 626 (quoting *Hale v. Ostrow*, 166 S.W.3d 713, 716-17 (Tenn. 2005). In *Friedenstab v. Short*, 174 S.W.3d 217 (Tenn. Ct. App. 2004), a housekeeper slipped on a pile of newspapers lying near the bottom of the home's steps. *Id.* at 218. The housekeeper sued the homeowners for negligence, claiming that the homeowners had a duty to warn her of the dangerous condition. *Id.* We concluded that the homeowners were entitled to summary judgment because they owed no duty to the housekeeper. *Id.* at 228. The court noted, "for it to be said . . . that [the homeowners] should anticipate that stepping on a newspaper, on the flat surface of the floor just below the last step, could result in harm, stretches the imagination." *Id.* at 227.

As in *Friedenstab*, it "stretches the imagination" to conclude that the Trust should have anticipated that a guest would use the raised parking landing to access a store on its property; fail to see the elevation difference; and suffer serious injuries. The Trust also had no notice that the height differential between the parking lot and concrete landing

presented an unreasonable risk of harm. Prior to this incident, there had been no other incidents reported to the Trust, nor had anyone ever complained to the Trust about the condition of the landing.

Finally, the height differential between the asphalt parking lot and the concrete landing was an open and obvious condition, so the Trust did not breach its duty of care by its failure to warn or correct the condition. "Open and obvious" means that "'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" *Coln*, 966 S.W.2d at 41 (quoting Restatement (Second) of Torts, § 343A (comment b)). A landowner may have a duty to a guest if the "harm can or should be anticipated notwithstanding the known or obvious danger":

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

*Id.* at 41 (quoting Restatement (Second) of Torts § 343A (comment f)).

Here, the Trust did not have a duty to Mr. Boykin because there was no reason for the Trust to have anticipated that Mr. Boykin would fail to see the obvious height differential between the two surfaces. *See id.* Mr. Boykin admitted that nothing was distracting his attention at the time he was walking. The Trust had no reason to anticipate that Mr. Boykin would fail to pay attention to obvious elevation changes and obstacles between the parking lots for the Radio Shack and the seamstress shop. Indeed, in taking that route, he had to navigate concrete parking blocks, changes in surfaces, and a curb. Mr. Boykin admitted that, if he had looked down at where he was walking, he would have clearly seen the elevation change and avoided the fall.

Therefore, we conclude that the Trust's duty of reasonable care did not extend to the elevation change between the parking landing and the parking lot. Because Mr. Boykin failed to satisfy the first element of his negligence claim, the trial court's grant of summary judgment was proper. Therefore, we need not reach the issue of comparative fault.

### III. CONCLUSION

For the reasons set forth above, we affirm the grant of summary judgment in favor of the George P. Morehead Living Trust.

_____
W. NEAL McBRAYER, JUDGE